KATIE TANNENBAUM, complainant,

*v.*

SEACOAST TRUST COMPANY OF ASBURY PARK et al., defendants, and J. LYLE KINMONTH, defendant-appellant.

[Submitted October term, 1941—Decided January 9th, 1942.]

On appeal from an order advised by Vice-Chancellor Buchanan, whose unreported conclusions are as follows:

"On May 25th, 1938, final decree was entered against three defendants, Kinmonth, Jones and Provident Trust Company, executor of Ackerman, for $57,900, together with interest thereon at 6% per annum from January 1st, 1932, and for one-half taxed costs of suit—which one-half amounted to $7,095.96. Application was made for order for the issuance of execution, which was granted after contest, on which costs of $43.31 were also awarded; and execution was issued December 20th, 1938, and levy made thereunder, on March 2d, 1939, on certain property of the defendants Kinmonth and Jones. Sale under the execution and levy was stayed pending appeal from the said final decree.

"The said final decree was affirmed April 21st, 1939 (*125 N. J. Eq. 360); but the enforcement thereof was further delayed at the instance and request of the judgment debtors Kinmonth and Jones, in order that they might take proceedings to render the property of the Ackerman estate also sub-

ject to availability for the satisfaction of the said decree. Such proceedings were taken, and the desired result was accomplished at about January 1st, 1940. (See the opinion filed in this cause February 23d, 1940.)

"On January 12th, 1940, Kinmonth, on behalf of himself and his co-judgment debtors, filed petition seeking authority for them to proceed, in the name of the trustee, against Seacoast Trust Company (in an endeavor to recoup for themselves from that company some part of the amount they were required to pay to the trustee under the final decree aforesaid) and praying a further stay of the execution proceedings or other proceedings by the trustee to enforce the collection from them of the moneys due on said decree. Order to show cause was issued with *interim* stay. On the return day, January 16th, the court offered to grant a short continuance of the hearing on the application for stay, if the judgment debtors would deposit with the clerk sufficient moneys to cover the full amount due on the final decree—this on the understanding and agreement that such deposit was not to be regarded as a tender in satisfaction of the decree (in whole or in part) but that if, at the continued hearing on the motion for stay, the court should deny such stay, then the moneys so deposited should be available towards satisfaction of the decree.

"Accordingly, Kinmonth and Jones each deposited $31,500, and the Ackerman estate deposited $31,288.22. On February 6th, 1940, the court made final determination on the application for stay; denied the same, vacated the *interim* stay, directed the clerk to turn over the moneys so deposited as aforesaid, to the judgment creditor (trustee) and directed the trustee to apply the same in satisfaction *pro tanto* of the amount due under the said final decree and to cause credit to be entered on the outstanding execution.

"(As to all this, see the aforesaid opinion of February 23d, 1940.)

"Two days later, on February 8th, 1940, the clerk turned over to the trustee the sum of $93,339.84—being the amount so deposited, less the clerk's fees. A day or two later however,— and within the ten-day period mentioned in Chancery rule

162,—Kinmonth and Jones filed notice of appeal from the order of February 6th, 1940. The Ackerman estate did not appeal, but waived appeal and expressly directed that the moneys which they had deposited be applied toward satisfaction of the decree; and the trustee accordingly credited as against the decree and execution the sum of $30,975.34 (being the amount of the Ackerman estate deposit, less the fees retained by the clerk).

"Pending the determination of the appeal from the order of February 6th, 1940, the trustee made no distribution of the amounts received from the deposits by Kinmonth and Jones, feeling legally bound to preserve the subject-matter of the appeal. The decree of February 6th, 1940, was subsequently affirmed, (*128 N. J. Eq. 176); and thereafter dispute arose between the trustee and Kinmonth and Jones as to what amount, if any, still remained due on the decree and execution.

"The present petition was thereupon filed by the trustee asking the court to instruct him as to whether or not interest continued to run after February 9th, 1940; what amount is still due on the writ of execution; and what amount is due the sheriff for fees. Order to show cause was issued against Kinmonth and Jones, and also the sheriff. The latter has made no contest or argument; Kinmonth and Jones contend that the decree and execution have already been more than fully satisfied.

"Three contentions are made by the respondent judgment debtors. The first is to the effect that they are not liable for any interest on any part of the amount of the final decree of May 25th, 1938, except on the sum of $57,900. That decree directed the defendants to pay to the trustee 'the sum of $57,900 together with interest thereon at 6% per annum from January 1st, 1932, and one-half of the trustee's taxed costs of the suit.' Respondents contend that no interest is due on the amount of the taxed costs, because the decree did not direct the defendants to pay interest thereon.

"It is difficult to believe that this contention is seriously put forward or relied on. No authority is cited; and this court has never known of any such contention ever having

been made heretofore. The decree is a money decree, and the equivalent of a judgmnt at law which fixes and specifies an amount as being due for principal and interest from the judgment debtor to the judgment creditor on the date thereof. That is what is done by the present decree. Notwithstanding that it does not follow the usual practice of specifying the particular amount which is the aggregate sum of the amount due for principal plus the amount due for interest at the date of the decree—(see the form of decree in foreclosure, *Dick. Ch. Prec.* (*1894*) *353*), nevertheless the amount so fixed by the present decree, as of the date thereof, is the sum of $87,210.55—being the $57,900, plus $22,214.59 (the interest on $57,900 from January 1st, 1932, to the date of the decree) plus $7,095.96 (the one-half of the complainant's costs as taxed). Thereafter interest runs on the judgment or decree —not on the original debt which is merged in and superseded by the judgment or decree.

"A judgment or money decree bears interest, at the legal rate, from the time of entry until the time of satisfaction, and such interest may be recovered under execution. *Cox* v. *Marlatt, 36 N. J. Law 389; Wilson* v. *Marsh, 13 N. J. Eq. 289.* Inasmuch as the taxed costs are a part of the amount fixed in and by the judgment or decree as due on and by reason of the judgment, interest naturally runs on that amount as well as on any other sum entering into the amount of the judgment or decree. Indeed many judgments and decrees (where the judgment is of nonsuit or no cause of action, or the decree is for dismissal), are judgments or decrees only for the amount of the costs and nothing more. Interest runs on such a judgment or decree, just as on any other; and execution issues for the recovery of such a judgment, with interest. See *Dick. Ch. Prec.* (*1894*) *214, 215.*

"The second contention of the judgment debtors is that no interest runs on the decree or any part thereof after the date that levy was made; on the ground that levy was made on property sufficient to satisfy the decree, and that in such case the decree is then and thereby satisfied. There is of course no doubt but that if and when a decree has been in fact fully satisfied, interest will no longer run thereon; and it

well may be that where levy under execution has been made upon property amply sufficient to produce, on sale, if such execution sale should be prosecuted and held with reasonable promptitude, sufficient moneys to enable the sheriff to pay to the judgment creditor the full amount of the decree and interest as directed by the execution, the decree should be deemed satisfied for all other purposes except the prosecution of such execution sale of the said property so levied upon for the raising thereout of the moneys requisite to the payment (besides sheriff's fees and costs of sale) to the judgment creditor of the full amount due him under the decree. It would certainly not be equitable to permit a judgment creditor who had acquired by levy on amply sufficient property to obtain everything which could be due him under his decree, to refrain from prosecuting the proceedings whereby he could become thus fully paid and satisfied, and harass the judgment debtor by interfering with other property of the debtor or the rights of third parties.

"That however is far from saying that the moment levy is made on sufficient property of the debtor to enable the sheriff in due course to comply with the command of the *fieri facias* (which commands him to cause to be made not only the face amount of the decree but also the interest thereon) the decree is to be deemed satisfied at that moment, as between the judgment creditor and the judgment debtor, and that the judgment creditor is not entitled to receive, even out of the property so levied on, any interest after that date—even though the judgment debtor by various devices obstructs and prevents the prosecution of execution sale for months or years. It is difficult to believe that such a contention is seriously made by these judgment debtors. Certainly none of the authorities cited by them support such contention; and certainly this court does not intend to be responsible for any such determination or statement or principle.

"The third contention of the defendants is that interest should not run on the amount of the decree or any part thereof, after the clerk had received, on January 16th and 17th, 1940, the payments hereinbefore mentioned—this on the ground that the sums so deposited were deposited as a

tender in satisfaction of the decree and amounted to more than was then due under the decree.

"The contention that the deposits were made by the present defendants as a tender in satisfaction of the decree is untrue. It is amazing that it should be put forward,—because counsel for defendants knows that it is untrue. In his brief to the Court of Errors and Appeals (on the appeal from the order of February 6th, 1940) he stated that these deposits were made 'not as a tender but as a conditional and restricted deposit;' that they were made expressly 'not in full or partial satisfaction of the decree.'

"These deposits were made by these defendants, not at their own instance and volition, but because the court required them to be made, as a condition for granting a temporary stay of enforcement of execution. These moneys were however to be available for application to the satisfaction of the decree if and when this court should so direct. This court did so direct, in and by the decree or order of February 6th, 1940; but from that order the defendants immediately appealed. The effect of that appeal was of course to stay the operation and effect of the order appealed from,—*Pennsylvania Railroad Co.* v. *National Docks, &c., Railway Co., *54 N. J. Eq. 647,*—so as to preserve the subject-matter of the appeal.

"The subject-matter of the appeal was, of course, the moneys deposited with the clerk. The object of the appeal was to reverse the order directing the clerk to pay over those moneys to the trustee in satisfaction, *pro tanto*, of the amount due on the decree. Such preservation of those moneys, *ipso facto*, prevented the use of those moneys in satisfaction of the decree. The appeal was an act by these defendants preventing the use of those moneys in satisfaction of the decree, and delaying the ultimate beneficiaries in receiving the money due them. Obviously there is no equitable basis for a claim by these defendants that interest should not run against them during the pendency of the appeal. Satisfaction of the decree by proceeding under the execution levy was also prevented by that appeal, because such proceeding had been stayed by order of this court at the instance of these defendants, and the vacation of that stay was a part of the order appealed

from, and such vacation was therefore stayed by the appeal. These defendants had the legal right to take the appeal, (notwithstanding the appellate court unanimously found the appeal was not well founded); but the defendants took the risks of an unsuccessful appeal and must accept the consequences of their own acts. They are just as much liable for interest on the unpaid portion of the decree for the period pending this appeal as for all of the rest of the time which has elapsed since the date of the original final decree, during which time they have prevented the trustee and his beneficiaries from actually obtaining the moneys decreed to be due to them.

"One other factor needs consideration. The order of February 6th, 1940, was appealed from on February 15th, 1940, —within the ten-day period during which execution ordinarily does not issue on a decree. Under Chancery rule 162, if appeal be filed within such ten-day period, process to enforce the decree will not issue without special order. In the present case no process issued; the clerk simply obeyed the order without the necessity for any process. He made payment to the trustee, pursuant to the order, on February 8th or 9th,—no notice of appeal having then yet been filed; and this presumably was done by analogy with the provisions of rule 154. This payment, however, did not give the trustee the right to proceed to distribute that payment to his beneficiaries. The appeal acted as a stay, as hereinbefore mentioned; and the trustee, acting accordingly, withheld any distribution or use of the moneys, pending the appeal. Neither he, nor the beneficiaries of the trust had any beneficial use of the moneys, nor any right to such beneficial use, pending the appeal. No interest was earned thereon; the trustee could not invest it; he was bound to keep the money available for payment in whichever way the appellate court should decide, and would not have been justified in putting it in a time savings account where it would have earned one per cent. interest.

"Doubtless the payment should not have been made by the clerk, without special direction, prior to February 16th,—and of course should not have been made after February 16th,

until the determination of the appeal. The moneys should have remained with the clerk until the determination of the appeal. If they had so remained, a certain amount of interest would have been earned thereon. Equity considers as done, that which should have been done; and it would seem fair and equitable therefore that these defendants should be given a credit of the interest which would have been so earned, against the amount of interest which continued to run on the unpaid amount due under the decree.

"In the view of this court there was due to the trustee from the three defendants, on May 25th, 1938, under and by the terms of the final decree of that date, $57,900 plus $22,214.59, being 6% interest thereon from January 1st, 1932, down to that date, plus $7,095.96 for costs,—or a total of $87,210.55; on which last mentioned sum (or such part thereof as remained unpaid from time to time) interest accrued at 6% until ultimate complete payment or satisfaction, (unless for some period of time the judgment debtors were prevented by the judgment creditor from making such payment or satisfaction—which was not true in the present case). Interest continued to accrue on the unpaid portions from and after February 9th, 1940.

"So much for the first question raised by the present petition of the trustee. The next question so raised is as to the amount which is still due under the execution.

"The amount due under the execution here *sub judice* is different from the amount due under the decree. The present writ of execution commands the sheriff to cause to be made

the sum of $57,900 together with interest thereon at 6% from January 1st, 1932; and

the additional sum of $7,095.96 (one-half the taxed costs); and

the additional sum of $43.31 (one-half the taxed costs on the application for execution); together with interest on the said taxed costs from September 16th, 1938; and the costs of this writ.

"Under the directions of this writ therefore there was due on February 9th, 1940,—(instead of $96,084.58 due under the decree)—

$57,900.00
28,168.35 (being interest thereon from January 1st, 1932 to February 9th, 1940)
7,139.27 (taxed costs)
599.76 (interest on costs from September 16th, 1938 to February 9th, 1940)

$93,807.38

"This is the computation as made by the sheriff, and there is no dispute as to the accuracy of this computation. There should be deducted from this $93,807.38, the sum of $30,975, being the amount received by the trustee from the clerk in respect of the payment made to the clerk by the executors of the Ackerman estate (who took no appeal from the order of February 6th, 1940, and directed that their payment be applied toward satisfaction of the decree).

"This payment was more than sufficient to pay the interest accrued to that date and left remaining due the sum of $62,364.50, on which sum interest subsequently accrued. This interest is to be computed down to October 20th, 1940, and amounts to $2,593.68, making an aggregate of $64,958.18. The running of interest on the said sum of $62,364.50 should stop at October 20th, 1940, because the opinion of the appellate court directing the affirmance of the order of February 6th, 1940, was filed October 10th, 1940, and the decree of affirmance could have been filed ten days later. In view of the fact that payment had already been made by the clerk to the trustee, as aforesaid, and that therefore nothing further remained to prevent the use of this money by the trustee after the expiration of the ten-day period within which an application for reargument might have been made by these defendants, it seems equitable that a payment should be credited to the defendants as of October 20th, 1940; and that in the calculation of the amount of such payment so to be credited there should be taken into consideration not only the $63,000 deposited by Kinmonth and Jones, but also (as hereinbefore mentioned) the interest which would have accrued thereon in the hands of the clerk, if that sum had remained in the clerk's hands until October 20th, 1940, instead of having been paid out on February 7th, 1940.

"If the $63,000 had so remained in the clerk's hands until October 20th, 1940, the amount which would have been then paid over to the trustee by the clerk ($63,000 plus interest earned, less the state's fees and commissions) would have been $63,040.18, and that sum is to be credited as of that date against the $64,958.18 which was the amount due up to that time. This leaves $1,918 still due, on which interest has accrued since October 20th, 1940, and will continue to accrue until satisfaction.

"There remains one other issue raised by the trustee's present petition,—namely what amount is due the sheriff for his fees under the execution. It is not perceived that this is a matter of any materiality or concern to the trustee. It is a matter purely between the sheriff and the judgment debtors; and no dispute or issue between them, or between petitioner and them or either of them, on this subject, is presented to the court in this proceeding,—either by the petition, or by any affidavits or anything in the briefs. Indeed it does not even appear that there is any dispute on this subject. It is therefore neither necessary nor proper that any determination in regard thereto should herein be made or considered.

"Order will be entered in accordance with the foregoing conclusions. Petitioner is entitled to costs and a counsel fee on these proceedings."

*Mr. Lester C. Leonard,* for the appellant.

*Messrs. Furst & Furst (Mr. George Furst,* of counsel), for the respondent Thomas A. Mathis, substituted trustee.

PER CURIAM.

This appeal is taken by the defendant Kinmonth only. The executors of W. Harvey Jones, deceased, have made payment of one-half of the sum thus found to be due.

The point made by appellant here is that "if interest is nevertheless to run upon a decree that was satisfied as a matter of law on March 2d, 1939, then it should not run beyond January 16th or January 17th, 1940, when there was deposited with the clerk of the Court of Chancery in cash a

sum representing more than was due under the decree when the deposit was made;" and that, at all events, "the running should certainly stop when the money" was actually paid over by the clerk to the substituted trustee.

We concur in the reasoning and conclusion of the learned Vice-Chancellor in this regard; and the order is accordingly affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ.  15.

*For reversal*—None.