IN THE MATTER OF THE ESTATE OF LAWRENCE DEVINCENZI, SR. (ALSO KNOWN AS L. DEVINCENZI), DECEASED.

FIRST NATIONAL BANK OF NEVADA, TRUSTEE, APPELLANT, *v.* IRMA DEVINCENZI MOSCONI, ETHEL DEVINCENZI HAGGERTY AND JEAN DEVINCENZI (IMPROPERLY NAMED JEAN HAGGERTY), RESPONDENTS.

No. 3488

March 3, 1948.          190 P.2d 842.

See, also, 64 Nev. 455, 183 P.2d 831.

*Kearney & Adams,* of Reno, for Appellant.

*McCluskey & Samuelson,* of Reno, for Respondents.

*Lunsford & Goldwater* and *Thatcher, Woodburn* and *Forman,* all of Reno, amici curiae.

## OPINION

By the Court, BADT, J.:

This is an appeal from an order made by the district court vacating and setting aside a sale made by a testamentary trustee. Such sale had been made some two

years after the estate had been finally distributed to the trustee and the execution discharged. The property, appraised at $10,000, had been sold by the trustee for $32,000. The trustee had given notice by letter to each of the beneficiaries of the trust, and one of the beneficiaries had consented thereto. Respondents, comprising three of the beneficiaries, moved the probate court, by pleadings entitled in the probate matter, for an order setting aside the sale upon certain specific grounds, namely, (1) that the trustee had not petitioned for an order of sale, (2) nor had it given the statutory notice of sale, (3) nor had it petitioned for confirmation, (4) nor had the heirs of the decedent been given an opportunity to purchase.[1]

■■ The last ground needs no further consideration than a reference to the admitted fact that the heirs had been notified of the proposed sale. The first ground need not be considered, as it is apparently based on a provision that was removed from our statute many years ago.

■ The lower court granted the motion and vacated and set aside the sale "upon the grounds stated in the

[1]The record contains the following statement of stipulated facts:

"At the hearing on the motion on October 11, 1946, no testimony was presented. It was stipulated that the property referred to in the motion dated September 28, 1946, which had been transferred by the original trustees under the will to First National Bank of Nevada as successors trustee, was sold by First National Bank of Nevada, as trustee, to Consolidated Warehouse Company, a Nevada corporation, by deeds dated September 20, 1946. Said deeds were recorded on September 21, 1946 in Book 188, pages 177 and 179, Records of Washoe County, Nevada. The sale price paid was $32,000. It was further stipulated that although notice of the intended sale had been given by the trustee by letter to each of the beneficiaries under the trust, and that one of the beneficiaries, Lawrence Devincenzi, Jr., had consented thereto, formal notice and petitions claimed by movants to be required under sections 9882.140, 9882.160, 9882.161 NCL had not been given or filed. It was further stipulated that the trustee had not petitioned for leave of court to make said sale nor had it petitioned for confirmation of said sale. "William M. Kearney, Esq., as attorney for the trustee, stated that a report of said sale would be included in the regular report of the trustee."

notice." It held, in other words, that the provisions of the probate statute governing the method and manner of sales by executors and administrators applied likewise to sales by testamentary trustees, after distribution of the estate and discharge of the executors. The particular sections relied upon are the following:

"§ 9882.140. Sales to be Reported and Confirmed—Time—Hearing, Setting and Notice. § 140. Except as provided by sections 151 and 152 of this act all sales of property must be reported to the court and confirmed by the court before the title to the property passes. The report must be verified. Such report and a petition for confirmation of the sale must be made within thirty days after each sale. The clerk shall set the petition for hearing by the court and give notice thereof for the period and in the manner required by section 283 of this act, or for such a period and in such manner as may be ordered by the court."

"§ 9882.160. Confirmation of Private Sale of Realty, Conditions—New Appraisement, When. § 160. No sale of real property at private sale shall be confirmed by the court unless the court is satisfied that the sum offered represents the fair market value of the property sold, nor unless such real property has been appraised within one year of the time of such sale. If it has not been appraised, a new appraisement must be had, as in the case of an original appraisement of an estate. This may be done at any time before the sale or confirmation thereof."

"§ 9882.161. Idem—Hearing—Order of Confirmation to be Entered, When—Order Directing Another Sale—Conduct of Subsequent Sale — Court May Accept Increased Bid. § 161. Upon hearing the court must examine into the necessity for the sale, or the advantage, benefit, and interest of the estate in having the sale made, and must examine the return and witnesses in relation to the sale; and if it appears to the court that good reason existed for the sale, that the sale was legally

made and fairly conducted, and complied with the requirements of the previous section, that the sum bid is not disproportionate to the value, and it does not appear that a sum exceeding such bid at least ten percent may be obtained, the court shall make an order confirming the sale and directing conveyances to be executed; otherwise it shall vacate the sale and direct another to be had, of which notice must be given and the sale in all respects conducted as if no previous sale had taken place. But if a written offer of ten percent more in amount than that named in the return is made to the court by a responsible person, and the bid complies with all provisions of the law, it is in the discretion of the court to accept such offer and confirm the sale to such person, or to order a new sale, or to conduct a public auction in open court."

The case was deemed to be of such importance that we permitted two firms of attorneys, counsel for certain banks and trust companies interested in the handling of many testamentary trusts, to file briefs and be heard in oral arguments as amici curiae. Although such amici curiae, as well as counsel for appellant and respondents, have favored this court with exhaustive briefs upon the question, we do not deem it necessary to discuss it at length. It is quite apparent from the sections cited and from numerous other sections of the probate code that these sections deal with estates in the course of administration and apply to and govern the acts of administrators and executors, and have no application to the powers and duties of testamentary trustees after distribution to them.

4. It is insisted that sec. 9882.244, N.C.L., all but the first paragraph whereof was added as an amendment to our probate statute, Revised Laws 1912, sec. 6073, in 1927, reserved in the district court express jurisdiction over sales by testamentary trustees. Such section reads in part as follows:

"§ 9882.244. Form of Decree — District Court to

Retain Jurisdiction, When — Trustee May Pray for Settlement of Accounts— Report of Condition of Trust Estate to be Filed. § 244. In the decree, the court shall name the persons and the proportion or parts to which each shall be entitled, and such person shall have the right to demand and recover his or her respective share from the executor or administrator, or any other person having the same in possession.

"Where any trust, life estate or estate for years has been created by or under any will to continue after distribution the district court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of the settlement of accounts under the trusts, life tenancies or estate for years, and the distribution of the residue to those entitled thereto, which distribution may be upon petition of the trustees, or of his executors or administrators, or of any party entitled to share in the distribution. And any trustee created by any will or appointed to execute any trust created by any will, may, from time to time, pending the execution of his trust, or may, at the termination thereof, render and pray for the settlement of his accounts as such trustee before the district court in which the will was probated, and in the manner provided for the settlement of the accounts of executors and administrators. * * *"

We think the limitation of the jurisdiction thus retained is clearly apparent. Concerning sec. 1699 of the Code of Civil Procedure of California (now sec. 1120 of the Probate Code), from which our section was taken, it is said in 11B Cal.Jur., paragraph 1323, page 838:

"This statute confers on the court of probate a new jurisdiction derived from the statute; it is not a part of the general probate jurisdiction to administer estates of decedents, but corresponds to the equity jurisdiction over trusts, which, but for the statute conferring it,

the court of probate would not have. Practically a portion of the general jurisdiction over trusts has been reserved to and reposed in the court of probate."

The courts of California have on several occasions held that the jurisdiction was strictly limited to the purposes recited. See Parkham v. Superior Court, 77 Cal. App. 321, 246 P. 334; In re Hubbell's Estate, 121 Cal. App. 38, 8 P.2d 530; Johnson v. Superior Court, 77 Cal.App. 599, 247 P. 249. The supreme court of Arizona, whose corresponding statute was likewise taken from the California statute, has given it the same construction. Bell v. Bell, 44 Ariz. 520, 39 P.2d 629. Other authorities are to the same effect. Many of these authorities were examined by us when we denied the motion to dismiss the present appeal. 64 Nev. 455, 183 P.2d 831. Such cases, in determining that orders dealing with testamentary trusts after distribution were appealable, treated such orders sometimes as final judgments or orders in actions at law or in equity, sometimes as final orders in special proceedings, and sometimes as final orders in probate. It is clear to us that such matters are in no way incident to the settlement of the estate, although it is true that they had their source in probate proceedings over which the probate court had at one time properly exercised jurisdiction and over which it still retained jurisdiction for the specified purposes mentioned in section 244 of our probate act.

■ We see no occasion for confusion in the fact that probate jurisdiction is exercised by the district court, our court of general jurisdiction, nor in the fact that in the exercise of its probate jurisdiction the district court may necessarily have to pass on sundry questions of law and equity. The proceeding in a probate case must in its very nature be distinct from an action at law or a suit in equity. Lucich v. Medin, 3 Nev. 93, 93 Am.Dec. 376. The district court may indeed have had jurisdiction both of the subject matter and of the parties to the

present proceeding, yet its act in setting aside the trustee's sale have been entirely outside of its jurisdiction as a probate court.

■ No complaint or petition was in terms addressed to the district court either as a court of law or sitting in equity. The sole point presented was that the trustee had not followed the requirements of the code prescribed for executors and administrators. The respondents did not charge the trustee with bad faith or with selling the property for a price less than its actual value or with any dishonest or corrupt acts, nor did they assert that the sale was not for the best interests of all persons interested in the trust, nor even that the trustee did not exercise a proper judgment or discretion. They simply treated the trustee's sale as a probate sale and contended that it was void because of lack of compliance with the probate statute requirements. The district court erroneously accepted this view.

■ *Counsel for appellant and amici curiae having submitted to this court their briefs indicating that the order of the probate court vacating the sale was beyond its jurisdiction and therefore void, respondents then filed their answering brief in which they refrained in toto from answering the arguments and authorities cited in such opening briefs and for the first time raised two additional points, namely, first, that the trust instrument conveyed to the trustee neither the express nor the implied power to sell the real estate of the trust, and secondly, that if the trust instrument could be so construed as to contain an implied power of sale, such implied power vested only in the named trustees and not in the successor trustee. It would be unnecessary for us to determine either of these points, because the record affirmatively discloses that neither was raised in the district court. This court has consistently for a great many years followed the well-established rule that it will not consider on appeal a point not urged in the lower court. Agricultural Ins. Co. of Watertown, N. Y.,

v. Biltz, 57 Nev. 370, 64 P.2d 1042; and cases therein cited.

The rule was likewise applied by this court where the point was raised for the first time on appeal by a respondent. Taylor v. Taylor, 58 Nev. 149, 72 P.2d 1105. The rule is not an arbitrary one, but is one that has its roots in justice and fairness and which is particularly applicable in the present case in which the intention of the testator as gleaned from the entire will might have been presented to the district court, as well as his intention not to limit to the original trustees either the express or implied powers governing the administration of the trust. However, as the estate is an extensive one[2] and it appears that there may have been prior sales by the trustee and there may be future sales, we deem it advisable, for the prevention of further litigation, to give our construction of the will with reference to the two points raised.

The testator made several bequests and then provided:

"I hereby give, devise and bequeath all the rest, residue and remainder of my estate of which I may die possessed and wherever situated, to my brother, Peter Devincenzi of San Jose, California, and Angelo Scanavino of Reno, Nevada, as trustees, upon the following trusts and for the following uses and purposes:

"(a) I direct that my said trustees or their successors shall hold the residue of my estate in trust, in equal shares for my children as follows, to-wit:

Irma Devincenzi Mosconi;

Ethel Devincenzi;

Lawrence Devincenzi, Jr.;

Jean Devincenzi,

until my youngest child, Jean Devincenzi, attains the age of twenty-five years.

[2]The property distributed to the original trustees in the probate court's final decree of distribution included nine parcels of real estate appraised in the aggregate sum of almost $100,000, besides several thousand dollars worth of furniture situate in several of these parcels, and some $30,000 worth of secured notes.

"(b) I further direct that my trustees shall have full power to operate and conduct any business which may be distributed to them by the executors of my estate so long as in their sound judgment it is profitable to operate such business.

"(c) I also direct and empower my said trustees to invest and re-invest the corpus of said trust fund in sound securities or business property and to make loans upon promissory notes secured by trust deeds or loans upon real estate having a reasonable market value of a sum double the amount of the loan thereon."

■■ Respondents urge that no implied power to sell can be found in this language or elsewhere in the will, and have referred us to several cases in which authority "to invest and reinvest" was held not to confer a power of sale of real estate. We do not deem it necessary to discuss these cases at length. Some of them involve particular elements from which the court thought it clear that it was not the testator's intention to confer a power of sale. So far as any of these cases would tend to hold categorically that the language used can in no event be interpreted as conferring a power of sale, we are satisfied that they are contrary to the great weight of authority. Authorization in the trust instrument to "invest and reinvest" has been almost uniformly interpreted a simpliedly conferring a power of sale. It is generally agreed that no set form of words is necessary to create such power, but that the same may be inferred from the general tenor of the instrument, especially where such power is necessary to carry out the trust. To reinvest the corpus of the trust or part thereof is said to indicate a change in the nature of the investment, and where part of the trust estate comprises realty, this in turn necessitates a sale so that the power is clearly implied as the obvious and common method of exercising the power to reinvest. No method other than a sale of the realty could accomplish the testator's design of having the trustee invest and reinvest the same in

secured notes, mortgage loans, etc. Vol. II, Scott on Trusts, 1022 et seq.; 65 C. J. Trusts, sec. 598, p. 733; 54 Am.Jur., Trusts, sec. 442, p. 350; Reinstatement of the Law of Trusts, Vol. I, paragraph 190; Penn v. Pennsylvania Co. for Insurances, 294 Ky. 271, 171 S.W. 2d 437; Schloendorn v. Schmidt, 115 Md. 74, 80 A. 309. See, also, annotation in 134 A.L.R. 378, entitled "Implied power of executor or testamentary trustee to sell real property." The annotator says: "In the vast majority of cases in which the question has arisen authority given by a will to 'invest' property of the estate, which was comprised at least in part of real property, has been held to confer a power of sale of such realty upon the executor or trustee." 134 A.L.R. 400. Further citation of authority is unnecessary. Cases holding contra, such as In re Roscoe's Will, 127 Misc. 773, 216 N.Y.S. 620, relied upon by respondents, are referred to in the text as being a minority view. See 65 C. J., Trusts, sec. 598, p. 734, n. 93.

We agree with the contention of respondents that in determining whether the will contains an implied power to sell "the guiding star is the intention of the testator." The testator left the remainder of his property to form a trust fund which consisted in major part of certain parcels of real estate. See Note 2. This trust fund the trustees were instructed to invest and reinvest. The particular parcel, whose sale was vacated in the present instance, was not "business property"—the kind of property in which the trust fund was to be invested. Outside of the real property, the cash and personal property (not including the secured notes) were negligible in extent. The "trust fund" can in no way be made to fit the other provisions of the will unless it be deemed to include realty as well as personalty. The provisions for monthly payments to the children, share and share alike, out of the net income, the provisions for distribution, the directions for investment and reinvestment and the restrictions on the nature of the investments, all lend

themselves to the view that the testator contemplated sales of the real estate by the trustee to accomplish his purposes. We are unable to concur with respondents' view that the use of the word "fund" restricted the trustee's power of investment to moneys. The "fund" or "trust fund" or "the corpus of the trust fund" obviously refers to the entire residuary estate. It has been often so construed. Kratz v. Slaughter's Ex'rs, 185 Ky. 256, 214 S.W. 878; Carter v. Mullin, 123 Md. 327, 91 A. 154; Young v. DuBois, 60 Misc. 381, 113 N.Y.S. 456. Nor can we agree with respondents' theory that the testator's direction to "hold" the property in trust indicated that it should be held intact and in kind and be so distributed to the beneficiaries. We think it clear that the testator's use of the word "hold" was in the sense commonly used in deeds, wills, testamentary trusts and other similar instruments—that of vesting the title and the right to hold or claim possession. See 40 C.J., Hold, 406 et seq. The usual habendum and tenendum clauses in deeds are illustrative of this meaning.

As to the second point (raised, we have noted, for the first time on appeal, in the respondent's answering brief), it is insisted by respondents that if an implied power of sale can be said to have been conferred upon the original trustees named in the will, such power did not pass to the successor trustee. We have found without great difficulty that the authority of the original trustees to sell the realty was impliedly given by the trust instrument. We are as well satisfied that the power thus vested applied not only to the original trustees but to their successor. We have carefully considered the arguments of respondents and the cases cited by them to the effect that when powers granted by the instrument are personal in the named trustee, they will not apply to a successor trustee not named by the trustor as a person in whom he reposed particular trust and

confidence. Such situation has no application·here. The testator named his brother and another person as joint executors, and thereafter left the residue of his estate in trust to be held by them, as trustees, "or their successors." He defined the occasions for and the manner of appointment of successor trustees. No personal trust, confidence, reliance or regard finds expression. There was no waiver of bond. The testator specifically directed "that my said trustees *or their successors* shall hold the residue of my estate in trust   *   *   *   for my children * * *." Neither the purposes of the trust nor the powers specifically and impliedly granted would indicate that such trust was personal in the named trustees. The provision for the appointment of an alternate or successor trustee in the event of the death or failure to act on the part of the named trustees imposes the duty on such successor trustee "to act in carrying out the trust hereinabove specified." The codicil has a similar provision that the named trustees "or their successors" continue to make the payments provided. In Restatement of Trusts, Vol. I, sec. 196, it is stated: "The powers conferred upon a trustee can properly be exercised by his successor, unless it is otherwise provided by the terms of the trust."[3] The general rule is well recognized that unless the power is personal to the named trustee by reason of the trustor's expression of trust and confidence in him, a substitute trustee can in general exercise a power of sale conferred by the terms of the trust. 54 Am.Jur., Trusts, sec. 438, p. 347; 65 C.J., Trusts,

---

[3] The Nevada Uniform Trusts Act, approved March 28, 1941, Stats. 1941, Chap. 136, p. 320, N. C. L. 7718, 30-7718-52, 1931–1941 Supp., has no statutory control over the present question because the act is made by its terms applicable only to testamentary trusts created by wills or codicils executed after June 1, 1941. Section 7718.38 provides: "Unless it is otherwise provided by the trust instrument, or an amendment thereof, or by court order, all powers of a trustee shall be attached to the office and shall not be personal."

sec. 622, p. 752. In the annotation at 116 A.L.R. 158, on the right of a trustee other than the person named in the will as such, to execute the power of sale conferred by the will, it is true that we find listed a number of cases (116 A.L.R. 189) holding that the power did not pass to the substituted trustee. However, in each of such cases the court was clearly satisfied that the power conferred was personal and discretionary, and that the named trustees had been chosen because of the trustor's special confidence in them. Where such distinguishing features do not appear, the listed cases uniformly are to the effect (116 A.L.R. 187) that the substituted trustees may execute the power of sale. To discuss the separate cases referred to would unnecessarily prolong this opinion.

Respondents maintain that if the district court lacked jurisdiction to make the order vacating the sale, certiorari is appellant's only remedy and that the availability of the remedy by way of certiorari precludes a right of appeal. No authority is cited in support of this contention, and this court has certainly never applied any such rule, although its converse is well established. See N.C.L., sec. 9231. The order vacating the sale upon the grounds recited in the motion was both erroneous and without the jurisdiction of the probate court, and the aggrieved trustee accordingly had the right of appeal. In re Estate of Forney, Deceased, 44 Nev. 279, 194 P. 331; In re Estate of Foley, 24 Nev. 197, 51 P. 834, 52 P. 649.

One other point requires consideration, namely, the nature of this appeal and the nature of the order or judgment appealed from. As the jurisdiction of the probate court had terminated (except the special jurisdiction conferred by sec. 9882.244, which we have held inapplicable), the relief sought by respondents, namely, the vacating and setting aside of the trustee's sale, could be sought only in a court of equity. Such relief was

entirely independent of the administration of the estate. It was a new proceeding and its status as such could not be changed by the simple method of entitling it in the probate proceeding. Parkman v. Superior Court, supra. Nor was its nature changed by the fact that the validity of the sale was attacked on the ground of failure to comply with the requirements of certain probate code sections. No more could its face effect be changed by the fact that it was made by the district court sitting in probate. The order vacating the sale became in all effects a final judgment appealable under the provisions of section 9385.60, N.C.L. Other points discussed by counsel for the respective parties and by amici curiae have been considered, but do not require discussion.

For the reasons hereinabove given, the order appealed from is hereby reversed with costs.

HORSEY, J., and BROWN, District Judge, concur.

EATHER, C. J., being absent by reason of illness, the Governor commissioned Honorable MERWYN H. BROWN, District Judge of the Sixth Judicial District, to sit in this case in his place.