MARY A. O'ROURKE *vs.* JOHN HANCOCK MUT. LIFE INS. CO.

PROVIDENCE—JANUARY 6, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Life Insurance. Agents. Declarations. Evidence.*

In an action by a beneficiary of a life-insurance policy testimony of what was stated to or by the solicitor is immaterial, since an agent in procur-

ing insurance is the agent of the applicant and not of the company in drawing the application, and the applicant is responsible for his mistakes and false answers.

(2)  *Warranties.   Procedure.*

While the answers of an applicant in an application for life insurance are warranties which must be proved by the plaintiff; for convenience of trial, they may stand as presumption or *prima facie* evidence until contradicted.

(3)  *Warranties.   Imputed Knowledge.* ·

Where an insurance company has on its records the evidence that an applicant has been previously rejected by it, the applications being identical in date of birth, age, town, occupation, and parents' name, it cannot set up the statement of the applicant that he had never been rejected by the company as a defence to a suit on the policy.

(4)  *Infants.   Contracts.   Warranties.*

An infant is not bound by his warranties in an application for life insurance, and the company cannot set up the falsity of such warranties as a defence to a suit on a policy by the beneficiary.

(5)  *Infancy.   Right to set up Plea.*

Although it is a general rule that the plea of infancy is the personal privilege of the minor, a beneficiary under a policy made with an infant may set up such plea to a defence of false warranties, since otherwise the application of the rule would amount to holding the contract good during the minority of the infant.

(6)  *Infancy.   Warranties.   Fraud.*

Where warranties are not binding upon an infant, in legal effect they are not a part of the contract, and the beneficiary is not estopped by them in the absence of fraudulent conduct on her own part in procuring the insurance with knowledge of the false statements in the application.

ASSUMPSIT on a policy of life insurance.   Heard on petition of defendant for new trial, and petition denied.

STINESS, C. J.   This is an action on a policy of life insurance, in which the plaintiff is the beneficiary, upon the life of her son, a boy fifteen years old when the policy was issued.

The defence is that the application contained false answers to questions which are made warranties by the terms of the policy.

To the question :  " Has this company ever refused to issue a policy on this life ? " the answer was " No."

The plaintiff admits in her testimony that she knew that

the boy had been previously rejected by this company, and says that she and her husband stated the fact to the agent who took the application and wrote in the answers, but that she did not know what he wrote.

A question and answer of the same import is repeated on the back of the application in the statement to the medical examiner.

Another question : " When did you last consult a doctor, and for what ? " was answered : " Two years ago ; bronchitis, not predisposed."

Another question, asking if the boy had ever had any serious illness from either one of fifteen diseases named, including rheumatism, was answered " No."

A previous application had an answer that the boy had consulted a doctor for rheumatism in January, 1893.

The case was tried to a jury, and a verdict was rendered in favor of the plaintiff for the sum of $243.40, the amount claimed ; and the defendant petitions for a new trial upon the grounds that the verdict was against the evidence and that there were errors of law in rulings at the trial.

(1) The first, third, fifth, and sixth exceptions were to the admission of testimony by the plaintiff that at the time of this application the defendant's agent was told that the applicant had been previously rejected by this company, and as to the powers of the agent.

Taken by themselves, the rulings were erroneous. In *Reed* v. *Equitable Co.*, 17 R. I. 785, this court adhered to the rule, recognized in this State since *Wilson* v. *Conway Co.* (1856), 4 R. I. 141, that an agent in simply procuring insurance is the agent of the applicant, and not of the company, in drawing the application, and that the applicant is responsible for his mistakes and false answers. See also *Bryan* v. *National Co.*, 21 R. I. 149. Testimony of what was stated to or by the solicitor was therefore immaterial. The effect of these rulings will be considered later.

The second exception related only to the form of a question claimed to be leading, which is not important.

(2) The fourth exception was to the refusal of the trial judge

to direct a verdict for the defendant, because of failure to prove the warranties embraced in the questions and answers stated above.

It was held in *Sweeney* v. *Metropolitan Co.* 19 R. I. 171, that such answers are warranties which must be proved by the plaintiff, but which, for convenience of trial, may stand on presumption or *prima facie* evidence until contradicted, like the signature and consideration of a promissory note. There was, however, testimony that the answers were true except as to rheumatism and the previous rejection, which will be considered under the seventh and eighth exceptions.

(3)   The seventh exception relates to an alleged statement by the solicitor that the former rejection was an immaterial matter, which statement, if made, would bind the company. It does not appear from the charge that the judge so ruled ; but .inasmuch as the jury were allowed to consider the fact whether the agent made the statement, the exception is applicable.   The solicitor, in making the application, being, as we have said, the agent of the insured, would not bind the company by his statements.   But another question is presented which renders this question of fact, of what the agent said, quite unimportant.   The previous application was in the hands of the company.   The rejection of it was by the defendant itself.   The purpose of warranties in a policy is not to set a trap for applicants, but to inform the company about important facts upon which the contract is based.   When, therefore, a company is in actual possession of knowledge of a fact and by turning to its own record can assure itself better than by the imperfect memory of an applicant, it is a perversion of the purpose of a warranty to allow it to avoid a contract.   It is evident injustice for one party to allow another to enter into a contract which the former knows or is bound to know is invalid.   As stated in *Reed* v. *Equitable Co.*, 17 R. I. 785, it is taking advantage of one's wrong. See also *Greene* v. *Equitable Co.*, 11 R. I. 434.

The defendant argues that it is unreasonable to hold that a company is bound to have present knowledge of all that appears on its previous files.   To this suggestion at the trial

the judge asked the very pertinent question : "Any more so than it was to ascertain that fact just after the boy died ? They have taken the money.   Now just as soon as the boy died and the beneficiary asks to be paid, then their records are looked up ; then they saved the record."   The company had exactly the same information in its possession at the time the contract was made that it has now.   If it is available at one time it ought to be imputable at the other.   But it is said that the company cannot be supposed to know that it is the same person, even though the name may be the same.   While this might be so in some cases, we do not see that there would be any uncertainty in this case, because the applications identify the same applicant by date of birth, age, town, occupation, and parents' names.   There was ample opportunity for examination, as the application was dated July 22, 1896, the medical examination was August 22, 1896, it is stamped, doubtless by the company, September 2, 1896, and the policy was not issued until September 9, 1896.

In *Jerrett* v. *John Hancock Co.*, 18 R. I. 754, there had been a previous rejection, but the policy was held to be void because neither application stated the fact, called for by a question, that a sister of the assured had died of consumption.   This was a fact that the company could not be held to know, and hence the case was essentially different from the case at bar.

The answer about rheumatism stands in a somewhat different relation.

The first application was dated March 3, 1893, and it stated that the boy had consulted a physician for about four attacks of rheumatism in January.   The company had no possible knowledge from this that he had rheumatism, and may have relied upon the denial of it in the present application as showing that his trouble, which he thought to be, turned out not to be rheumatism.   The evidence of the plaintiff was that he had rheumatism.   This might have been after the first application, and so outside of any implied notice.   Up to this point we find no ground for a new trial, because the statements to the solicitor did not prejudice the defendant by

reason of the knowledge of the facts imputed to it in its previous rejection of the applicant.

(4)    The answer about rheumatism is included in the general ground of defence raised by the eighth exception, which is to the refusal of the court to charge as follows:    "If the boy did sign an application containing a material untrue statement, the beneficiary is bound and the policy is void."

The defendant had notice from the application itself that it was dealing with a minor and taking his warranties.

The question therefore is whether an infant is bound by his warranties in a contract of insurance.

In considering it we have not the advantage of weighing the reasons given in previous decisions, for we have been unable to find a case like this reported.    Certain principles, however, are well settled in regard to infancy.

It is an elementary rule that infants are incapable of making contracts, except for necessaries.    Such contracts are voidable, but not void. · The infant may avoid his contract, but an adult contracting with him cannot.    A contract may thus be binding on an adult when it is not binding on an infant. *Dearden* v. *Adams*, 19 R. I. 217 ; *Shurtleff* v. *Millard*, 12 R. I. 272.

As an infant is not liable on his contract, he is not liable for warranties or representations upon which the contract is based.    Thus, in *West* v. *Moore*, 14 Vt. 447, it was held that infancy was a bar to an action founded upon a false and fraudulent warranty upon the sale of a horse.    *Prescott* v. *Norris*, 32 N. H. 101.    In *N. H. Co.* v. *Noyes*, 32 N. H. 345, the contract was for fire insurance on the property of an infant.    It was held that it was not a contract for necessaries, and that the infant was not liable on his premium note. In *Doran* v. *Smith*, 49 Vt. 353, it was held that infancy was a bar to an action on the case for false and fraudulent representations by a vendor or pledger as to his ownership of property sold or pledged.    In *Gilson* v. *Spear*, 38 Vt. 311, the court said that an infant is liable in an action *ex delicto* for an actual and willful fraud only in cases in which the form of action does not suppose that a contract has existed ;

but that, when the *gravamen* of the fraud consists in a transaction which really originated in contract, the plea of infancy is a good defence.   See notes to this case in Ewell's Lead. Cas. 206 ; *Freeman* v. *Boland*, 14 R. I. 39.   The principle of these cases is that infancy is a bar for misrepresentation based upon a contract.   It is to be noted· that the cases cited were brought by the adult against the infant.   But if the plaintiff cannot sue the infant upon his warranties, upon what principle can he set up the same warranties in defence ? In either case he is seeking to enforce the contract as made by the infant.   In *Derocher* v. *Continental Mills*, 58 Me. 217, where a minor who had agreed to work for the defendant for six months, at least, and to give no less than two weeks' notice before leaving, left within six months and without giving such notice, the question was whether the defendant could deduct the damages occasioned thereby from what he would otherwise be entitled to recover for his labor.   The court held that no deduction could be made, saying :   "To compel the minor thus to make good the loss occasioned by the non-performance of his contract is virtually to enforce the contract ; and thus to enforce the contract is in effect to abrogate the rule of law that a minor is not bound by his contract."

This language was quoted in *Shurtleff* v. *Millard*, 12 R. I. 272, apparently with approval, although the decision of the court in that case proceeded upon the theory that, as there was no binding contract, the plaintiff could recover reasonable compensation, which might include a deduction for in-· jury done.

We think the reasoning of *Derocher* v. *Continental Mills* is sound, and that the terms of a minor's contract can no more be set up defensively than offensively.

(5)    The defendant argues that the answer of infancy is a privilege personal to him, and that it cannot be taken advantage of by any one else.

Undoubtedly this is a general rule, but its chief application is for the protection of the infant in cases where an adult

seeks to avoid his contract upon that ground, when the contract has not been disaffirmed by the infant.

To apply the rule in this case would amount to holding the contract good during the minority of the infant, because, the policy being on his life, no suit could be brought upon it until after his death. He could only disaffirm it by refusing to pay premiums and thus forfeiting the policy. If it were an endowment policy maturing before his majority, it follows, from what we have said, that he could sue upon it without being bound by his warranties. If, after majority, he should continue to pay premiums, he might be regarded as having affirmed the contract, as in *Morrill* v. *Aden*, 19 Vt. 505.

Our conclusion is that during the minority of the applicant his warranties cannot be set up in defence to a suit upon the policy. But, even if this is so, the defendant argues that the beneficiary cannot recover because, the policy being conditional upon the truth of the statements, she is estopped by false statements on the face of the contract. Undoubtedly this would be the rule in the case of a valid contract, because (6) she could recover only on the terms of the contract. This contract purports to have been made with the minor. The beneficiary has made no statements of her own. If the warranties are not binding upon the minor, then in legal effect they are not a part of the contract and the beneficiary is not estopped by them. This does not mean that a beneficiary may not be estopped by fraudulent conduct of her own. For example, if she had procured the insurance on this application with knowledge of the false statements. But we do not find that fact in this case.

A copy of the medical examination is on the back of the policy, and it is claimed that notice is imputed to her of its contents. Even so, it shows only a denial of any serious illness from rheumatism ; and while it appears from the testimony that "he has had rheumatism," it does not appear that it was serious so as to charge the plaintiff with knowledge of a false warranty. There was a conflict of testimony as to her knowledge of the statements, and it does not clearly

appear from the record that much stress was laid upon the fact.

We must assume, however, that the question was before the jury, otherwise the testimony would have no relevancy; and, from the verdict for the plaintiff, that she did not know the contents of the application. It therefore appears that she is not estopped by the terms of the contract, nor by any conduct of her own which precludes her from recovery.

We think that the defendant is not entitled to a new trial, either upon the ground of erroneous rulings or verdict against the evidence.

*Irving Champlin,* for plaintiff.

*Doran & Flanagan,* for defendant.