DOLLAR INVESTMENT CORPORATION, Appel-LANT, *v.* MODERN MARKET, INC., Respondent.

No. 4394

October 10, 1961                    365 P.2d 311

(Rehearing denied November 13, 1961, 77 Nev. 397, 365 P.2d 1117.)

*George Rudiak*, of Las Vegas, for Appellant.

*Samuel S. Lionel*, of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The parties will be referred to as Modern and Dollar. This is an action on a written contract for the sale and purchase of a market. By stipulation, the sole dispute concerns the inventory of groceries and liquor and the method used to determine the price to be paid therefor.

Modern, seller, requests judgment against Dollar, buyer, for the sum of $13,755.43 claimed to be the balance due under the following paragraph of their contract:

"The grocery inventory shall be based on the retail price of groceries, less the average grocery percentage gross profit as disclosed for the period set forth in the financial statement of the Seller dated January 31, 1958." Dollar denied any obligation to pay the amount claimed and, by counterclaim, asked that the quoted paragraph be reformed, because of mutual mistake and fraud, to reflect the true understanding of the parties. The district court found for Modern, and entered judgment in the amount of $13,755.43, with interest and costs. Dollar appeals.

The financial statement of seller referred to in the mentioned paragraph reflected the percentage of gross profit to be 19.12 percent. Soon after consummation of the written contract, a retail cost inventory was taken disclosing a value of $59,645.99. That value, less the percentage of gross profit, pegged the purchase price at $48,241.68. It is agreed that Dollar had paid $34,486.25. The difference between the last two figures, to wit, $13,755.43, is the amount for which judgment was entered.

Dollar has assigned many errors. With but one exception to be later discussed, each claim of error attacks the

sufficiency of the evidence to sustain the findings of fact and legal conclusions made by the lower court. In this regard, Dollar's contentions may be summarized as follows: First, that the evidence clearly shows the true agreement to be that the purchase price of the grocery inventory was to approximate the wholesale cost thereof, represented by seller to be about $40,000; that the formula provided by the written contract to take the inventory at retail and reduce the figure thus obtained by 19.12 percent was intended to approximate the wholesale cost; that the percentage gross profit figure of 19.12 percent was too low, as established by expert accounting testimony, resulting in a greater purchase price than intended by the parties. Second, that the evidence clearly shows that Dollar wanted to take the inventory at wholesale, but was induced by Modern to agree to the method adopted because of the latter's representation that the result would be substantially the same.

In its brief and oral argument, Dollar recognizes a conflict in the evidence as to each contention. Notwithstanding such conflict, it insists that, as equitable relief of reformation is sought, our duty is to weigh the evidence and direct the entry of a proper judgment. As to this, it is first noted that the complaint does not seek equitable relief; reformation is sought in defense and by counterclaim. In any event, we have heretofore held that we will not disturb the findings of court or jury when supported by substantial evidence, and it makes no difference whether the case be at law or in equity. Close v. Flanary, 77 Nev. 87, 360 P.2d 259, 263; Agricultural Insurance Co. v. Biltz, 57 Nev. 370, 382, 64 P.2d 1042, 1046.

There is substantial evidence to support the findings and judgment. As indicated, there was a direct conflict as to the basic contentions heretofore mentioned. Gordon, president of Modern, testified that he believed the inventory at wholesale cost would run about $55,000

(not $40,000) and so advised Silverman, president of Dollar. Furthermore, Gordon testified that it was agreeable with him to determine price on a wholesale cost inventory basis, but that Silverman was anxious to take possession immediately, resulting in their joint decision to the quicker method of a retail price inventory less percentage of gross profit.

In addition to this testimony creating a direct conflict with Dollar's theory of the case, there is much evidence, undisputed, to which the lower court apparently gave credit. Without detailing it all, and by way of example only, such evidence established that Silverman, the buyer's president, had been in the grocery business for years, knew merchandising and the customary procedure for buying and selling inventory on hand. The formula set out in the written contract had been thoroughly discussed before an attorney was selected to reduce their understanding to written form. The financial statement therein referred to was delivered to Silverman and, in turn, to his accountant for analysis, before the written contract was prepared. Silverman expressed to seller his satisfaction with that financial statement. Silverman reviewed all aspects of the proposed sale and purchase with his attorney before directing preparation of the necessary documents. The first draft of the sale and purchase contract was altered in certain respects relating to penalty, but was not found incorrect regarding the paragraph here in question. With such evidence before it, the lower court could properly find that the paragraph in controversy correctly stated the parties' intended agreement.

The remaining assignment of error attacks the allowance of interest at 7 percent per annum from August 2, 1958. Dollar claims that the amount of money due under the contract was unliquidated until rendition of final judgment, and that interest was allowable only from date of judgment, August 26, 1960. Dollar relies upon Agricultural Insurance Co. v. Biltz, supra, as authority for this contention. That case is not in point. The policy

of insurance upon which suit was based expressly provided that the loss would not become payable until a satisfactory proof of loss was received by the company, including an award by appraisers. There was no satisfactory proof of loss, or valid award by appraisers, with the result that plaintiff's demand was, in fact, unliquidated until rendition of judgment.

However, in the case before us, the contract specifically provided that the full purchase price would be due and payable, and the escrow would close on August 1, 1958. By that time the retail cost inventory had been taken and the exact amount due seller under the contract was known to both parties. Dollar did not refuse to pay because the amount due was unknown; it refused because of its claim that the contract did not correctly state the parties' intended agreement, an entirely different matter.

NRS 99.040 provides that, upon an express contract, "interest shall be allowed at the rate of 7 percent per annum upon all money from the time it becomes due." The lower court was clearly correct in allowing interest from August 2, 1958.

Judgment affirmed.

BADT, C. J., and MCNAMEE, J., concur.

ON PETITION FOR REHEARING

## OPINION

ON PETITION FOR REHEARING

By the Court, THOMPSON, J.:

Appellant Dollar Investment Corporation has filed a petition for rehearing. Our opinion affirmed the judgment below which allowed interest from August 1, 1958 on the amount found to be due. It is urged that the allowance of interest is improper because, by stipulation made before trial, appellant had deposited $11,000 in court to await the court's determination of the controversy and that, under such circumstances, at least that sum would not be subject to interest.

Our opinion did not refer to the deposit in court. Though not mentioned, it was considered. The record discloses that, in consideration of respondent's releasing an attachment of appellant's funds, appellant agreed to deposit $11,000 in court to await the outcome of trial. Under such circumstances, the deposit in court does not stop the running of interest on the amount found to be due. Tannenbaum v. Seacoast Trust Co., 131 N.J.Eq. 93, 25 A.2d 533; 47 C.J.S., Interest, sec. 54, p. 66; Olivares v. Garcia, 127 Tex. 112, 91 S.W.2d 1059.

Rehearing denied.

BADT, C. J., and McNAMEE, J., concur.