JEANNETTE VIOLIN AND MISCHA VIOLIN, APPELLANTS, *v.* FIREMAN'S FUND INSURANCE COMPANY, RESPONDENT.

No. 4892

September 30, 1965                    406 P.2d 287

[Rehearing denied October 14, 1965]

*Samuel S. Lionel,* of Las Vegas, for Appellants.

*Singleton and DeLanoy* and *Rex A. Jemison,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

This is an action by the insureds on a policy of insurance covering a Guadagnini violin of the agreed value of $10,000. Following loss of the violin, the insurer

458

Fireman's Fund Insurance Company canceled the policy, tendered return of the premium paid and denied liability on the ground that the insureds had made a fraudulent, material misrepresentation in their application for insurance. The lower court ruled in favor of the insurer, and this appeal by the insureds followed. The sole question is whether, on the facts here disclosed, the insurer waived its right to cancel the policy or is estopped to deny liability. We have concluded that factors favoring the application of the doctrine of waiver against the insurer are here present, thus precluding avoidance of liability. Accordingly, we reverse.

The question asked on the application for insurance with which we are concerned was, "Has any company ever refused or canceled insurance?"[1] The applicants answered, "No." The answer was false. Four years earlier the same insurer, Fireman's Fund, had canceled a policy which it had issued to the same insureds covering musical instruments. The lower court found that this misrepresentation was material to the risk against which the applicants sought coverage and was not innocently made. Notwithstanding this fact the insureds insist that the insurer may not avoid liability as it was chargeable with knowledge of the prior cancellation because of information in its own records and chose to write the present policy anyway.

1. It is, of course, true that one has an obligation not to speak falsely when inducing another to make a bargain. This worthy rule is recognized both by statute and case law in Nevada. NRS 686.190; Poe v. La Metropolitana Co., 76 Nev. 306, 353 P.2d 454 (1960); Smith v. North American Ins. Co., 46 Nev. 30, 205 P. 801 (1922). Thus, absent factors favoring the application of the doctrines of waiver or estoppel, an insurer is not bound by an insurance contract that he was induced to make by the fraudulent misrepresentations of the insured. The application for insurance in the

---

[1] The question is poorly phrased. However, it was not contended below, or here, that its meaning is obscure and the applicants misled.

instant matter contained the following language, "Signing this form does not bind the Proposer or the Company to complete the insurance, but it is agreed that this form shall be the basis of the contract, should policy be issued. If any of the above questions have been answered falsely or fraudulently the entire insurance shall be null and void and all claims thereunder shall be forfeited." Cf. Poe v. La Metropolitana Co., supra, where similar language was used in the application for insurance and noted by this court in affirming a judgment for the insurer. Relying upon the quoted clause of the application for insurance, the claims superintendent of Fireman's Fund, after notice of loss, advised the insureds that the application was incorrectly filled out "resulting in a non-disclosure of information material to our acceptance of the risk," rescinded the policy and tendered return of the premium paid.

The application for insurance was not made a part of the insurance contract by incorporation by reference, i.e., a statement in the policy that the application is made a part of the policy, Phoenix Mutual Life Insurance Co. v. Raddin, 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644 (1887), or by endorsement on the policy itself. Smith v. North American Insurance Co., supra; cf. Universal Underwriters v. Snyder, 81 Nev. 315, 402 P.2d 483 (1965). Thus the answers in the application did not become warranties or conditions, but are representations collateral to the contract of insurance. The distinction between a warranty and a representation is sometimes of controlling significance in insurance litigation. The following authorities articulate that distinction in depth: Patterson, "Warranties in Insurance Law," 34 Colum.L.Rev. 595 (1934) ; Kimball, "Warranties, Representations and Concealment," 4 Utah L.Rev. 456 (1955) ; Patterson, "Essentials of Insurance Law" § 76, p. 384 (2d ed.) ; Phoenix Mutual Life Insurance Co. v. Raddin, supra; Moulor v. American Life Insurance Co., 111 U.S. 335, 4 S.Ct. 466, 28 L.Ed. 447 (1884). In general terms a warranty in

insurance law is a term of the insurance contract which does not create an obligation on the part of the warrantor, but which creates a condition of the insurer's duty to pay the loss. The traditional view is that a warranty must be strictly complied with and, once a breach of warranty has occurred, the insurer may avoid the policy. The ancient Nevada case of Healey v. Fire Insurance Company, 5 Nev. 268 (1869), is an example of the traditional, orthodox view. On the other hand, a representation is not a term of the insurance contract and, though it may also, if false, and material to the risk, supply the basis for a rescission of the insurance contract by the insurer, courts tend to be less strict in their treatment of a representation than is the case when a warranty is involved. Here the insurer's rescission rests solely upon a false representation by the applicants which was collateral to the contract of insurance, though perhaps an inducement to its issuance, and not upon any claim that a term of the insurance contract was breached.[2] With these preliminary observations in mind we turn to discuss the question presented by this appeal.

2. The insureds do not challenge the findings below, that they fraudulently misrepresented a fact material to the risk when applying for coverage. However, they do contend that the insurer may not rely upon that misrepresentation to avoid liability, for it had in its possession full information about the prior cancellation, and elected to issue the present policy in spite of such knowledge.

The insurer's claims department, Los Angeles office, did have a record of the prior loss and subsequent cancellation. However, no agent of that department of the insurance company was in any way connected with the solicitation or issuance of the present policy, and

---

[2]The distinction between a warranty and a representation disposes of an alternative argument offered by the insurer on this appeal. The insurer seeks to sustain the judgment in its favor by the "non-waiver" provision of the insurance contract. That provision denies power to an agent or representative of the insurer to waive any condition or provision of the policy. As the representation here involved is not a term of the policy, the non-waiver clause is inapplicable.

neither the insurer's application-taking agent nor its policy-writing agent was aware that the applicants had misrepresented a material fact in requesting coverage. It is also apparent that, because of the expense, volume and complexity of its business, the insurer in this and related situations believed itself free to rely upon the representations of fact contained in an application for insurance, and had not instituted a program for communicating information in the files of the claims department to those in the production end of the business. Pointing primarily to these circumstances the insurance company argues that it would be improper to invoke the doctrines of waiver or estoppel against it and authorize a policy liability, for we would be rewarding claimants who are not in court with clean hands.

This argument is not without persuasion. Yet it finds only meager support in case law. See Rhode v. Metropolitan Life Ins. Co., 129 Mich. 112, 88 N.W. 400 (1901) ; Great Northern Life Ins. Co. v. Vince, 118 F.2d 232 (6th Cir. 1941), which stand for the principle that earlier records do not necessarily put the company on notice unless there is some circumstance to direct its attention to them. See also Schrader v. Prudential Ins. Co., 280 F.2d 355 (5th Cir. 1960), dealing with group insurance. The overwhelming body of authority favors the insured and holds that the insurer, as a matter of law, is chargeable with knowledge of the misrepresentation, because of full information about it present in its own files. See: McKinnon v. Massachusetts Bonding & Ins. Co., 213 Wis. 145, 250 N.W. 503 (1933), (theft policy) ; Kennedy v. Agricultural Ins. Co. of Sioux Falls, 21 S.D. 145, 110 N.W. 116 (1906), (fire policy) ; Kelly v. Metropolitan Life Ins. Co., 44 N.Y.S. 179 (1897), (life policy) ; Atlas v. Metropolitan Life Ins. Co., 181 N.Y.S. 363 (1920), (life policy) ; O'Rourke v. John Hancock Mutual Life Ins. Co., 23 R.I. 457, 50 A. 834 (1902), (life policy) ; Clay v. Liberty Industrial Life Ins. Co., (La.App.), 157 So. 838 (1934), (life policy) ; Hicks v. Home Security Life Ins. Co., 226 N.C. 614, 39 S.E.2d 914 (1946), (life

policy) ; Monahan v. Mutual Life Ins. Co., 103 Md. 145, 63 A. 211 (1906), (life policy). The rationale employed is not always clear. Some courts speak in terms of waiver. Others invoke estoppel. On occasion both doctrines are used interchangeably and without differentiation.[3] Whatever the theory, a fact of overriding significance exists in every case—the insurer's ability to promptly discover the misrepresentation after the loss has occurred. We prefer that diligence to be exercised at an earlier time—when the application for insurance is taken. The Rhode Island Court in O'Rourke v. John Hancock Mutual Life Ins. Co., 23 R.I. 457, 50 A. 834, expressed the same view in the following words, "The defendant argues that it is unreasonable to hold that a company is bound to have present knowledge of all that appears on its previous files. To this suggestion at the trial the judge asked the pertinent question : 'Any more so than it was to ascertain that fact just after the boy died? They have taken the money. Now, just as soon as the boy died, and the beneficiary asks to be paid, then their records are looked up; then they saved the record.' The Company had exactly the same information in its possession at the time the contract was made that it has now. If it is available at one time, it ought to be imputable at the other."

We agree that in these peculiar circumstances the insurer, as a matter of law, is chargeable with actual knowledge of the misrepresentation and may not avoid liability. Our conclusion rests upon waiver. In the law of insurance waiver is defined as the giving up of a known privilege or power. It may be express or implied from circumstances and always involves consent, express or implied, but does not necessarily rise to the level of contract. Vance on Insurance, 470 (3d ed. 1951). Specifically we hold that the insurer waived its power to rescind the insurance contract by issuing the policy

---

[3]For the distinctions between waiver and estoppel read : Morris, "Waiver and Estoppel in Insurance Policy Litigation," 105 U. of Penn.L.Rev. 925 (1957) ; Vance on Insurance, 470–546 (3d ed. 1951).

with knowledge that the insureds had fraudulently misrepresented a material fact in their application for insurance.

The judgment below is reversed, with direction to enter judgment in favor of the appellants and against the respondent for $10,000 with interest from July 24, 1961, until paid, and taxable costs below and here.[4]

BADT, J., concurs.

ZENOFF, D. J., dissenting:

I respectfully dissent. There should not be a reward for a knowing and wilful misrepresentation. Poe v. La Metropolitana Co., 76 Nev. 306, 353 P.2d 454 (1960), and Smith v. North American Ins. Co., 46 Nev. 30, 205 P. 801 (1922), support the proposition that "the insured should observe the utmost good faith and deal honestly and fairly with the company in respect to all material facts inquired about, and as to which he had or should be presumed to have had knowledge, and make a full, direct, and honest answer, without evasion or fraud, and without suppression, misrepresentation, or concealment of material facts which the parties themselves deemed material to be disclosed." Smith v. North American Ins. Co., supra, at 45–46 (citing Moulor v. American Life Ins. Co., 111 U.S. 335, 4 S.Ct. 466, 28 L.Ed. 447 (1884)).

The majority turns on the presumption that the company had actual knowledge of the misrepresentation

---

[4]NRS 99.040 provides that interest upon an express contract shall be allowed at the rate of 7 percent per annum upon all money from the time it becomes due. The policy provides that "all adjusted claims shall be paid or made good to the assured within 60 days after presentation and acceptance of satisfactory proof of interest and loss at the office of this company." The amount of loss is not in dispute. It is liquidated. The insurer acted within 60 days after proof of loss by cancelling the policy. The letter of cancellation is dated July 24, 1961. Interest runs from that date. Dollar Investment Corp. v. Modern Market, Inc., 77 Nev. 393, 365 P.2d 311 (1961). Compare Agricultural Ins. Co. v. Biltz, 57 Nev. 370, 64 P.2d 1042 (1937), and Arley v. Liberty Mutual, 80 Nev. 5, 388 P.2d 576 (1964), where the amount of the loss was disputed, i.e., unliquidated, and interest ran from date of judgment.

because of an experience which would be revealed by an examination of its inactive files, and cites authority in support of this proposition. The cited cases are distinguishable from the fact situation here.

Rhode v. Metropolitan Life Ins. Co., 129 Mich. 112, 88 N.W. 400 (1901), and Great Northern Life Ins. Co. v. Vince, 118 F.2d 232 (6th Cir. 1941), hold that a life insurance company is not deemed to possess actual notice of information which it may have in its records unless there is some circumstance to direct its attention to earlier records. See also Brown v. Metropolitan Life Ins. Co., 65 Mich. 306, 32 N.W. 610 (1887).

The logic of O'Rourke v. John Hancock Mutual Life Ins. Co., 23 R.I. 457, 50 A. 834 (1902) is persuasive if confined to the language used. It says that if an insurer is allowed to use the records to avoid the loss, it should be imputed to its knowledge when accepting the policy. Yet, the case turns on the minority of the insured whose warranties were not permitted to be set in defense by the company after his death.

Clay v. Liberty Industrial Life Ins. Co. (La.App.), 157 So. 838 (1934), Hicks v. Home Security Life Ins. Co., 226 N.C. 614, 39 S.E.2d 914 (1946), and Monahan v. Mutual Life Ins. Co., 103 Md. 145, 63 A. 211 (1906), cited by the majority in support of the premise that an insurance company is held to be cognizant of information in its own records, all involve situations where more than one policy is outstanding, contrary to policy provisions. And in each of these cases, the additional policies being objected to were issued by the same company, so waiver was applied. The information the insurers were held to have knowledge of was contained in an *active* file.

In the case before this court, the information deemed by the majority to be knowledge to the insurer are facts from an *inactive* file. A distinction should be made between files used periodically by an insurer to record premiums paid, changes in beneficiaries and addresses, and renewals, and files containing records of rejections for coverage, claims from former policies, and cancellations.

It appears from the evidence that all current policies are on file at the head office and that inactive files are destroyed according to a specified company policy. The evidence also shows that destruction of records in various branch offices, while subject to the same policy, is not coordinated with the destruction at the head office due to different storage facilities. It seems inequitable to hold an insurance company to knowledge of what is contained in the files of one isolated outpost. Since *all* active files are maintained at the head office, it seems that the only workable rule is to hold an insurer cognizant of the active files.

The controlling factor in the Clay, Hicks, and Monahan cases was that the insurer knowingly collected premiums on a void policy thereby inducing the insured to believe he was protected by valid insurance. In the Clay case premiums were accepted for 50 weeks, in Hicks for over a year, and in Monahan for 41 weeks. "It might be that the mere issuance of the policy would not work an estoppel by waiver, but after a reasonable time has elapsed during which the company might ascertain the fact of its issuance, and certainly after the payment of 50 weekly premiums, it must be presumed to have waived the provisions (against the existence of another policy) in that regard." Clay v. Liberty Industrial Life Ins. Co., supra, at 839–840.

In the present case the loss of the violin occurred slightly more than two months after issuance of the policy. The trial court here found that the company did not have knowledge of the prior experience with the insured at the time of the issuance of the policy, and since there was such a short period between issuance of the policy and the loss, and only one premium had been paid,[1] there is not sufficient evidence in the record to have alerted the insurer to search its dead files to upset the determination of the trial judge that the company should be held to be without knowledge, actual or presumed.

The fire insurance case cited by the majority, Kennedy v. Agricultural Ins. Co. of Sioux Falls, 21 S.D.

---

[1] The premium paid was for a year, thus no continuity of conduct that would alert the insurer.

145, 110 N.W. 116 (1906), also can be distinguished by the active file analogy. In that case a provision prohibiting the coverage of the same property by additional insurance was invoked by the insurer to avoid the loss. The insurer, on the additional policy in issue, was the reinsurer and was thus held to have knowledge of both policies.

While McKinnon v. Massachusetts Bonding & Ins. Co., 213 Wis. 145, 250 N.W. 503 (1933), is the only case involving theft insurance, the court in that case found that the misrepresentation involved (that insured had not had a loss in the prior five years) was made *without* intent to deceive. In the case before this court, the trial court found that the misrepresentations were *fraudulently* made.

In Kelly v. Metropolitan Life Insurance Co., 44 N.Y.S. 179 (1897), the fact of a previous rejection had been withheld from the company. The court held that the act of rejection by the same company was its own and they were held to have had knowledge of it. However, in Atlas v. Metropolitan Life Ins. Co., 181 N.Y.S. 363 (1920), the Kelly case was eroded. A clause in the policy provided that issuance of the policy not be deemed a waiver of a representation as to the existence of any previous policy. It was held that "the receipt of premiums continuously after the issuing of a policy is * * * *if unexplained,* conclusive evidence of a waiver of the condition," and cited the Kelly case. Id. at 365. (Emphasis added.)

This was not a case where the agent of the company who had written the first policy also wrote the second. Nor was this a situation where there was another active file with the company that would cause it to be aware on a periodic basis that something unusual existed between the insured and the company. Nor am I satisfied that the language of the application and the policy did not sufficiently refer to each other so as to make the false inducement a part of the policy itself. And since NRS 686.190 requires that applications be attached to policies only in the life insurance and health and accident insurance classifications in order

for the insured to be bound by the written statements in the application, it is clear that actual attachment of the application is not necessary in this instance. See NRS 681.030 (3) (c) for the separate classification of personal property floaters. The application form itself referred to the policy and provided that, "* * * this form shall be the basis of the contract should policy be issued. If any of the above questions have been answered falsely or fraudulently the entire insurance shall be null and void and all claims thereunder shall be forfeited."

The policy as issued contained the following condition:

"1. Misrepresentation and Fraud. This policy shall be void if the assured has concealed or misrepresented *any material fact or circumstance concerning this insurance* or the subject thereof or in case of any fraud, attempted fraud or false swearing by the assured *touching any matter relating to this insurance* or the subject thereof, whether before or after a loss. 'THIS POLICY IS MADE AND ACCEPTED SUBJECT TO THE FOREGOING STIPULATIONS AND CONDITIONS AND TO THE CONDITIONS PRINTED IN THE BACK HEREOF, WHICH ARE HEREBY ESPECIALLY REFERRED TO AND MADE A PART OF THIS POLICY, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive or be deemed to have waived any provision or condition of this policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached.' " (Emphasis added.)

While there is a split of authority in the state courts as to the validity of non-waiver agreements, many state courts and the Federal Courts hold that these agreements are a valid limitation to the policy. See Northern Assurance Co. v. Grand View Bldg. Ass'n, 183 U.S. 308, 22 S.Ct. 133, 46 L.Ed. 213 (1901) ; Lamar

v. Aetna Life Ins. Co., 85 F.2d 141 (10th Cir. 1936) ; Gish v. Ins. Co. of No. America, 16 Okl. 59, 87 P. 869 (1905).

Healey v. Imperial Fire Ins. Co., 5 Nev. 268, 5-6-7 Nev. 215, seems to lend support to strictly enforcing these provisions. "There is but one safe rule, and that is take the contract as written, subtracting nothing therefrom, adding nothing thereto. * * * The court is to enforce contracts which the parties have made, but has no power to make new contracts for them, or to alter or vary in any essential particular, those they have mutually agreed to be bound by." Id. at 220-1. Therefore, since there was no waiver written upon or attached to the policy, the insurer should not be deemed to have waived the condition requiring forfeiture for misrepresentations.

There need be little concern about the future life insurance cases when the company seeks to avoid payment claiming misrepresentations in the application and the deceased is not available to refute the contention. The cases have set up patterns and standards that impose responsibilities upon the companies after the issuance of a policy and receipt of premiums thereon. For the purposes of this factual state, the plaintiff-appellant made a deliberate misrepresentation of a material fact to the company and there were not enough other factors present to create actual or presumed knowledge.