**AMERICAN HOME ASSURANCE COMPANY, a corporation, Plaintiff,**

v.

**HARVEY'S WAGON WHEEL, INC., a corporation, Defendant.**

**UNITED STATES LIABILITY INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**HARVEY'S WAGON WHEEL, INC., a corporation, Defendant.**

**Civ. Nos. R-2931 BRT, R-2933 BRT.**

United States District Court,
D. Nevada.

July 16, 1975.

Jerome F. Downs, Thornton, Taylor & Downs, San Francisco, Cal., for American Home Assurance Co.

Roger W. Jeppson, Woodburn, Wedge, Blakey, Folsom & Hug, Reno, Nev., for United States Liability Ins. Co.

Laxalt, Berry & Allison, Carson City, Nev., for Harvey's Wagon Wheel, Inc.

ORDER

BRUCE R. THOMPSON, District Judge.

This is a consolidated action brought by two insurers, American Home Assurance Company (American) and United States Liability Insurance Company (United States Liability), against defendant, Harvey's Wagon Wheel, Inc. (Harvey's) for a declaration that the insurers are not liable for a fire loss under the business interruption policies

that were issued to defendant by plaintiffs. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, as American is a citizen of New York, United States Liability is a citizen of Pennsylvania, and Harvey's is a citizen of Nevada.

## FACTS

The case was tried to the Court without a jury. The Court finds the following facts:

On July 11, 1972, both plaintiffs issued policies of fire insurance in which they insured defendant against interruption of business. Both policies contained automatic sprinkler warranties which provided:

"AUTOMATIC SPRINKLER WARRANTY

"THIS POLICY BEING WRITTEN AT A REDUCED RATE BASED ON THE PROTECTION OF THE PREMISES BY AN AUTOMATIC SPRINKLER SYSTEM, IT IS A CONDITION OF THIS POLICY THAT SO FAR AS THE SPRINKLER SYSTEM AND THE WATER SUPPLY THEREFOR ARE UNDER THE CONTROL OF THE INSURED, DUE DILIGENCE SHALL BE USED BY THE INSURED TO MAINTAIN THEM IN COMPLETE WORKING ORDER, AND THAT NO CHANGE SHALL BE MADE IN SAID SYSTEM OR IN THE WATER SUPPLY THEREFOR WITHOUT THE CONSENT IN WRITING OF THIS COMPANY."

Additionally, both policies contained a provision disclaiming liability for loss occurring while the hazard was increased by any means within the control or knowledge of the insured [1] and a provision permitting reconstruction or enlargement of the building if consent in writing is obtained.[2]

The policies were placed by a broker, the Corroon & Black-Meneley & Ames Agency through another broker, Western General Agency. Western General Agency solicited the business and submitted proposals for plaintiffs' acceptance. The agency had no authority to bind the insuring companies.

At the time the policies were issued, the restaurant and casino areas of Harvey's were equipped with operative automatic sprinkler systems. Prior to the issuance of the policies, Harvey's had begun to reconstruct the casino and restaurant areas. Two employees of Western General Agency, Mr. Maybe and Mr. Jensen, had knowledge before the policies were issued that Harvey's had undertaken the construction project. Those employees did not relate that knowledge to either American or United States Liability.

An employee of American, Mr. E. Nadeau, noticed construction materials on Harvey's premises before the policy was issued. Also, on behalf of American, Mr. J. A. Nelson, a representative of

1. "Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured * * *."

2. "PERMITS AND AGREEMENTS CLAUSE Permission granted: (a) For such use of the premises as is usual and incidental to the business conducted therein and for existing and increased hazards and for change in use or occupancy except as to any specific hazard, use or occupancy prohibited by the express terms of this policy or by any endorsement thereto * * * (c) For the building(s) to be in the course of construction, alteration, or repair, all without limit of time and to build additions thereto, and this policy, under its respective item(s) shall cover the Business Interruption value of such additions in contact with the described building(s); but if any building herein described is protected by automatic sprinklers, this permit shall not be held to include the reconstruction or the enlargement of any building so protected, without the consent of this company in writing. This permit does not waive or modify any of the terms of conditions of the Automatic Sprinkler Clause (if any) attached to this policy. Nothing herein contained shall be construed to extend the term of this policy."

American International Group, inspected Harvey's on February 7, 1973, and noted that construction was in progress. Mr. Nelson did not inquire whether the sprinkler system was operative. Mr. Nadeau received and read Mr. Nelson's report. No employee of United States Liability had knowledge of the construction. No one representing Harvey's either asked for consent or specifically notified either Western General Agency, American, United States Liability or their representatives that the sprinkler system would be inoperative.

On May 15, 1973, the insured building was damaged by fire and Harvey's business was interrupted for more than sixty days. At the time of the fire, the sprinkler system in the casino was inoperative. The sprinkler system in the restaurant area was operative. The casino was damaged by fire; the restaurant was not.

## OPINION

■ It is a well established principle of insurance contract interpretation that if the language in a policy may be interpreted in two or more ways, it is to be construed in favor of the insured. *Home Indemnity Company v. Desert Palace*, 86 Nev. 234, 236, 468 P.2d 19, 21 (1970); *Gerhauser v. North British and Merc. Ins. Co.*, 7 Nev. 174, 185 (1871). Defendant attempts to use that principle to establish that the automatic sprinkler provisions are not warranties and therefore are not determinative of underlying coverage but rather are conditions concerned only with a reduced premium rate allowable for sprinklered building risks. Thus, defendant argues, its breach of the automatic sprinkler warranty should not affect coverage but should result only in an increase in the premium rate.

Defendant argues that its interpretation is reasonable because of the ambiguities in the sprinkler provision. Specifically, defendant argues that the phrases "written at a reduced rate based on the existence * * * of an automatic sprinkler system" and "due diligence shall be used by the insured to maintain them in complete working order" imply that the parties intended that there would always be coverage.

■ An insurance policy must be construed as a whole and the court must examine the reasonable expectations of the parties entering into the agreement. *Aetna, Inc. v. Sacramento-Stockton S. S. Co.*, 273 F. 55 (9th Cir. 1921); *Jurd v. Pacific Indemnity Co.*, 57 Cal.2d 699, 704, 21 Cal.Rptr. 793, 371 P.2d 569, 571–2 (1962). When the automatic sprinkler endorsement is read in conjunction with the policy provision in which the insurers disclaim liability in the event of loss occurring while the hazard is increased by the insured,[3] it becomes clear that the endorsement is to be construed to define the insurers' duty to pay loss rather than the premium rate. Cf. *Violin v. Fireman's Fund Insurance Co.*, 81 Nev. 456, 460, 406 P.2d 287, 289 (1965); *Holz Rubber Co. v. American Star Ins. Co.*, 14 Cal.3d 45, 120 Cal.Rptr. 415, 533 P.2d 1055 (1975). A warranty must be strictly complied with and, once a breach of warranty has occurred, the insurer may avoid the policy. *Violin, supra; Healy v. Imperial Fire Insurance Co.*, 5 Nev. 268 (1869).

The instant automatic sprinkler warranty provides clearly and unequivocally that "no change shall be made in said system * * * without the consent in writing of this company." Since defendant shut off the water supply without obtaining written consent, defendant breached the warranty. See *Buehler Corporation v. Home Insurance Company*, 358 F.Supp. 15 (S.D.Ind.1973), aff'd, 495 F.2d 1211 (7th Cir. 1974). There plaintiff's building was insured by a policy containing a provision essentially identical to the instant automatic sprinkler warranty. Because of a broken valve, the sprinkler system was shut off for a period of about four months. Aft-

3. See note 1, *supra.*

er a fire damaged the building, the insurers disclaimed liability. The Court held that since the plaintiff did not advise the Rating Bureau that the sprinkler system was shut off, it had violated a condition of the policy and could not recover from the insurer. Cf. *Holz Rubber, supra,* 14 Cal.3d at 59, n. 12, 120 Cal.Rptr. 415, 533 P.2d 1055.

Defendant further contends that plaintiffs waived warranty and should be estopped from disclaiming liability under the policies. That contention is based on the facts that (a) Mr. Maybe and Mr. Jensen of Western General Agency, and (b) American, through an employee, knew both before the policies were issued and while they were in effect that defendant had undertaken a reconstruction project.

■ No employee of United States Liability had personal knowledge of the construction project either before or after the company issued its policy. Thus, the company could be deemed to have waived the warranty and to be estopped from asserting it only by imputation of knowledge of the construction project through Western General Agency. But Western General Agency acted as a broker for the Corroon, Black-Meneley & Ames Agency in the procurement of the policies, not as an agent for United States Liability. Neither Mr. Maybe nor Mr. Jensen had actual, apparent or ostensible authority to bind United States Liability. Thus, any knowledge they might have had could not be imputed to the insurer. See NRS 683A.030; NRS 683A.040; and *Strangio v. Consolidated Indemnity & Ins. Co.,* 66 F.2d 330, 334–335 (9th Cir. 1933), in which the Court construed statutes similar to NRS 683A.030 and 683A.040 and held that an insurance broker receiving an application for insurance is an agent of the insured, not the insurer, therefore his knowledge cannot be imputed to the insurer. See, generally, 45 C.J.S. Insurance § 695. Since Western General Agency acted in an identical broker capacity with respect to American, the knowledge of Mr. Maybe or Mr. Jensen cannot be imputed to that insurer either.

■ Mr. Nadeau had knowledge of the construction before the policy was issued because he drove past Harvey's and saw construction materials next to the building. Defendant contends that from that knowledge of the construction, American has waived the automatic sprinkler warranty and should be estopped from asserting it because the company issued the policy knowing that Harvey's would violate the Permits and Agreements Clause by engaging in reconstruction without written permission. But Mr. Nadeau could have reasonably expected that had Harvey's intended to continue the reconstruction program while the policy was in effect, it would have communicated that fact to American and requested permission to do so.

Additionally, after the policy was in effect, Mr. Nadeau received and read a report prepared for and submitted to American by Mr. J. A. Nelson. In his report, under the heading "Protection," Mr. Nelson states:

> "The Main Building * * * is presently protected on a 4 inch single source 1970 Star wet pipe automatic sprinkler system * * *. This will be replaced with a 6 inch system as the Restaurant construction progresses."

Thus, American knew before and after its policy was issued that construction was underway but there is no plain evidence that the insurers knew that the sprinkler system would be shut down or, if so, during what period. Mr. Nelson told a managing officer of Harvey's that it was very important to maintain the sprinkler system during construction because of the added risk.

■ Mere knowledge on the part of the insurer of a breach of a warranty, however, is not sufficient to constitute waiver or estoppel, especially when the policy requires written consent by the insurer to waive the warranty. Waiver is the intentional relinquishment of a

known right. To constitute waiver, there must be an actual intention to relinquish the known right or conduct from which one should infer the intention to relinquish that right. See 7 Couch on Insurance, 2nd Ed., § 35:247; *Violin, supra,* at 462. Waiver cannot be inferred from the mere silence of the insurer. Couch, *supra,* § 35:267.

 Estoppel differs from waiver as, with respect to estoppel, intent is immaterial. Instead, the necessary condition is deception by the insurer upon which the insured relies to his detriment. Couch, *supra,* § 35:248; *Voorhees v. Spencer,* 89 Nev. 3, 9, 504 P.2d 1321, 1326 (1973).

It may be observed in a general way that in the area of insurance law, hardship cases produce exceptions to established contract principles. Sometimes there is plain evidence that the insurance company is taking unfair advantage of the insured by relying on technical provisions of the policy, the so-called "fine print." In such cases, the courts are naturally eager to find exceptions and doctrines of waiver and estoppel and the like are stretched to the outermost limits. This is not such a case. The automatic sprinkler endorsement was of the essence of the policy. It resulted in a premium rate approximately one-eighth the rate for non-sprinklered business premises. It was specifically bargained for by the insured and was discussed at about the time the policy was delivered. It was again called to the insured's attention when construction was underway. The unsprinklered areas were damaged by fire while the sprinklered areas were not. Law and equity require that the insurers be permitted the protection of the unambiguous policy warranty under these circumstances.

This Court cannot infer from either Mr. Nadeau's conduct or the report that the insurer American intended to waive the warranty in the policy. Moreover, there is no evidence that Harvey's was misled to its detriment. Therefore, this Court finds that plaintiffs are not liable on their policies for business interruption costs incurred by Harvey's as a result of damage caused by the May 15, 1973 fire. Accordingly,

*It hereby is ordered* that judgment shall be entered in favor of plaintiffs and against defendant.