**H.K.H. CO., a partnership consisting of Henry S. Hendler and J. M. Hendler, Plaintiff,**

v.

**AMERICAN MORTGAGE INSURANCE COMPANY, Defendant.**

**No. CV–R–78–107–ECR.**

United States District Court,
D. Nevada.

May 1, 1980.

Fahrenkopf, Mortimer, Sourwine, Mousel & Sloane, by Wayne L. Mortimer and Julien G. Sourwine, Reno, Nev., for plaintiff.

Hawkins, Rhodes, Sharp, Barbagelata & Haase, by M. Craig Haase, Reno, Nev., for defendant.

## MEMORANDUM DECISION

EDWARD C. REED, Jr., District Judge.

This case is brought under the diversity jurisdiction of the federal courts, Title 28 U.S.C. § 1332, and primarily involves an unresolved question regarding interpretation of a contract of insurance. The plaintiff has sued the defendant pursuant to a certain "lease guarantee insurance policy" seeking reimbursement for miscellaneous expenses incurred in respect to the subject warehouse property located in Sparks, Nevada, including taxes, insurance, maintenance, utility costs and sewer use fees. Pursuant to trial before the court sitting without a jury, the court now renders its decision as to the two separate grounds for relief presented by the defendant which are breach of contract and alleged breach of the defendant insurer's duty of good faith and fair dealing in handling the claims of its insured. Substantive state law, of course, controls.

The relevant facts, which were largely undisputed, are found by the court to be as follows. In early 1973, D. H. Overmeyer Co., Inc., was the owner of the subject property, a 121,000 square foot warehouse. The property was sold to plaintiff's predecessor in interest, Bergin Way Associates, in a transaction wherein Overmeyer remained in possession by virtue of a lease, containing a 25-year term as executed between said parties on May 20, 1973. According to the terms of the lease, the lessee, Overmeyer, was required to pay $12,400.70 per month and would also pay such expenses as insurance, maintenance and utility costs as additional rental. A separate clause provided that the lessee would be required to pay all real property taxes directly to the taxing authority. Testimony at trial revealed that this type of lease is commonly known as a "net-net-net" lease under which a lessee typically pays a monthly lump sum for rental as well as being responsible for all other costs and expenses arising from the property.

As a further condition for said sale, Bergin Way required that a lease guarantee insurance policy be obtained. The defendant American Mortgage Insurance Company (AMIC) was contacted and agreed to issue such a policy. The policy issued was made effective for eleven of the 25 year lease term and would terminate in May, 1984. The policy guaranteed the insured a total of $11,617.40 per month of the $12,400.70 monthly rental payment due under the Overmeyer lease.

Paragraph 11 of the policy entitled "Minimization of Rental Losses", provided for what was to occur to minimize rental losses

if the lessee (Overmeyer) should default. First, subparagraph (a) provided for the lessor's responsibility. The lessor is obligated to use reasonable diligence to make all reasonable efforts to minimize future rental losses. The lessor has the responsibility to expediently remove the defaulting lessee so as to obtain physical possession of the premises. The lessor is required to make reasonable efforts to re-rent the premises. Subsection (b) of paragraph 11 of the policy, which essentially forms the crux of the instant dispute provides for the insurance company's rights in event of the lessee's default, reads as follows:

"(b) *Company's Rights*—At any time after the lessor notifies the Company by means of a notice of default or a default status report filed in accordance with Condition 9 and 10, respectively, that the lessee is thirty (30) days in default on a rental installment, then the Company may direct the lessor to commence appropriate action, including legal proceedings, if necessary, to obtain physical possession of the demised premises and to make all reasonable efforts to rerent said premises. *The lessor shall agree to accept the Company as a successor in possession to the lessee in default with the right to sublet or relet the demised premises to a tenant of the Company's own choosing for the unexpired term of the lease. No such subleassee or subtenant, however, shall use the premises for any purpose prohibited in the original lease.*" (Emphasis added.)

Soon after the execution of the lease and issuance of the subject insurance policy the lessee, Overmeyer, defaulted in making the monthly rental payments. Overmeyer filed for bankruptcy in New York and plaintiff's predecessor in interest duly made a claim with AMIC for policy benefits. The policy provided that benefits could not be paid until a continuing default of 90 days had occurred. The defendant additionally directed the plaintiff's predecessor to commence the legal action necessary to obtain physical possession of the property as additionally required under paragraph 11(b). As a result of Bergin Way's efforts, physical possession of the property was obtained on or about December 14, 1973, pursuant to an order by the bankruptcy court abandoning the property and terminating the lease. The defendant AMIC then elected to become a "successor in possession" to the departed lessee in default as also provided for in paragraph 11(b) of the insurance contract.

Defendant AMIC then commenced making the monthly payments of $11,617.40 as required by the policy to plaintiff's predecessor, Bergin Way. The warehouse was only partially occupied at this time and as such, both defendant and Bergin Way initially endeavored to obtain tenants therefor. By 1976 the building was virtually empty and in view of the large losses being incurred by the defendant insurer, AMIC and Bergin Way jointly decided on taking the action necessary to get the property occupied by paying tenants. Numerous improvements and repairs were made in order to attract tenants including structural alterations to provide office space and changes to allow a greater number of smaller tenants. Such repairs cost a total of $127,000 whereby the defendant insurer in possession spent $112,000 while Bergin Way agreed to contribute $15,000. In addition a new roof was needed which cost $73,000. AMIC lent a portion of the sums necessary for this expenditure to the owner Bergin Way.

The premises appear to have become fully tenanted during 1977 and the leases therefor were executed between AMIC and the individual tenants.

The approval of Bergin Way was obtained in cases where physical changes on the property were necessary in order to execute a particular sublease. Overall, the price per foot charged by defendant in reletting the property appears to have been on the low side of the then prevailing market rate but not unreasonably so where under the circumstances considerable difficulty and delay were encountered in obtaining acceptable tenants.

It further appears that Bergin Way did not, in accepting the monthly payments under the policy, waive its right to later seek recovery of the aforementioned property expenses from the defendant. In 1978, the subject property was sold to the plaintiff herein at which time the defendant agreed to accept the plaintiff H.K.H. as the successor to Bergin Way under the policy. A written assignment of Bergin Way's chose in action against the defendant for recovery of said expenses was also made to plaintiff at this time.

The plaintiff now seeks recovery of the expenses delineated in the Overmeyer lease from defendant commencing at the time defendant elected to take possession as provided by the policy together with the difference between the $12,400.70 payable monthly under the lease and the $11,617.40 which the insurer has paid monthly since said time. The parties agree that the defendant insurer's involvement with the subject property will terminate with the expiration of the subject policy on June 1, 1984. None of the currently existing subleases executed by AMIC go beyond that date. Since becoming obligated to pay the monthly policy benefit of $11,617.40 defendant has done so regularly but has steadfastly refused to pay the other stated expenses relating to the property.

The bases for relief advanced by the plaintiff are twofold. Plaintiff asserts that defendant breached the contract of insurance in that by electing to become a "successor in possession to the lessee in default" under paragraph 11(b) of the policy it succeeded to the position of the lessee Overmeyer as to the obligations under the lease over and above its duty to pay the monthly policy benefits. Secondly, plaintiff contends that the defendants' conduct in the failure to pay such costs, expenses and additional rents represents a breach of the insurer's duty of good faith and fair dealing in handling the claims and treatment of the interests of its insured. This court must try to determine what the Nevada courts would hold were these issues before them.

Testimony at trial indicated that the form used by AMIC to write the within policy of insurance was commonly used by other insurers issuing policies of lease guarantee insurance at the time the defendant did so here but has subsequently been abandoned by the industry for reasons that were not made clear. Neither party or the court has been able to find authority which has sought to interpret the "successor in possession" phrase in this or an analogous context.

The crux of plaintiff's case is that when the defendant elected to become the successor in possession to the defaulting lessee, and in proceeding to sublease the premises in seeking to minimize its losses as provided by the policy that it undertook the obligations of the May 20, 1973, Overmeyer lease. The plaintiff's argument places a great deal of emphasis on the use of the word "successor" in the disputed clause in paragraph 11 of the policy. The plaintiff maintains that the clause is ambiguous at best and should be interpreted in favor of the plaintiff. It is well settled in Nevada that when a clause in an insurance policy is ambiguous, the language will be interpreted in favor of the insured. *North American Life & Casualty Co. v. Gingrich*, 91 Nev. 491, 538 P.2d 163 (1975), *Clark v. Truck Insurance Exchange*, 598 P.2d 628 (Nev.1979).

Initially, it must be determined then whether the disputed clause contained in the subject insurance contract is ambiguous. The instant policy of lease guarantee insurance is a contract between the parties and must be construed to carry out their intent. *Eipp v. State Farm Mutual Auto Insurance Company*, 429 F.Supp. 675, 678 (D.C.Nev.1976). Similarly, an insurance policy must be construed as a whole and the court must examine the reasonable expectations of the parties entering into the agreement. *American Home Assurance Co. v. Harvey's Wagon Wheel, Inc.*, 398 F.Supp. 379 (D.C.Nev.1975), *Aetna, Inc. v. Sacramento-Stockton S.S. Co.*, 273 F. 55 (9th Cir. 1921).

"Furthermore, an insurance contract will be given a reasonable interpretation in light

of the particular subject-matter, situation and contemplation of the parties." *Kravitz v. Equitable Life Assurance Soc. of U.S.*, 453 F.Supp. 381 (D.C.Pa.1978) accord, *Wing Mah v. United States Fire Ins. Co.*, 218 Kan. 583, 545 P.2d 366 (1976).

Under the circumstances present here, the court finds the disputed language contained in paragraph 11(b) of the subject policy of lease guarantee insurance is not patently ambiguous. A reasonable reading of the entire policy indicates that a "successor in possession" in this context would be one who takes the place of another as to possession without necessarily assuming all of the obligations of his predecessor. This interpretation is supported by the final sentence in paragraph 11(b) which states that: "No such sublessee or subtenant . . . shall use the premises for any purpose prohibited in the original lease." This sentence would have been mere surplusage if the contract is read so as to reflect the intent that the insurer was to take the place of the defaulting lessee under the original lease. The policy like any other contract must be construed as an entirety with each of the clauses lending meaning to the other and each part must be read in connection with all other parts thereof. *Holz Rubber Co., Inc. v. American Star Ins. Co.*, 14 Cal.3d 45, 120 Cal.Rptr. 415, 533 P.2d 1055 (1975), *Schwab v. State Farm Fire & Cas. Co.*, 27 Ariz.App. 747, 558 P.2d 942 (1976).

It is apparent here that the purpose of paragraph 11(b) was to allow the insurer to take possession of the premises in order to minimize its losses and relet or sublease the property subject to the restrictions in the original lease without assuming the additional obligations of the lease. It is not proper to lift the "successor in possession" language out of the clause currently questioned and attach different meaning to it than that intended by considering it in isolation from the rest of the contract. The insurer's obligation under a policy of insurance cannot be enlarged or varied by judicial construction. *Treasure Craft Jewelers, Inc. v. Jefferson Ins. Co. of New York*, 431 F.Supp. 1160 (D.C.Pa.1977). In addition,

"Parties to insurance contract are at liberty to contract for insurance to cover such risks as they see fit and are bound by terms of contract and courts will not undertake to rewrite terms thereof." *Wiley v. Travelers Ins. Co.*, Okl., 534 P.2d 1293 (1975).

Here the plaintiff's predecessor and the defendant insurer contracted so that in event of default under the lease the insured would receive the amount of $11,670.40 per month while the insurer would have three options as to its course of action. Under paragraph 13 of the policy the insurer had a right of subrogation of the insured's claims against the defaulting lessee which was obviously useless here with the lessee having filed for bankruptcy. Under paragraph 11 the insurer could either insist that the insured/owner make efforts to minimize the rental losses or elect to become a "successor in possession." In either event the insurer was obligated to pay the $11,670.40 policy benefits and the insured left with meeting the obligations previously borne by the lessee under the Overmeyer lease. By electing to take possession of the property it appears that the insurer did expend considerable time and money which the insured would likely have been forced to incur had the insurer instead sought to pursue its option of insisting that the insured seek to minimize rental losses. To extend the insurer's liability under the contract to include the additional rent and expenses for which the lessee was obligated under the terms of the lease would render an absurd result in this case.

AMIC will have incurred a net loss at the expiration of the subject policy in 1984 in an amount agreed by the parties at trial to be somewhere in the area of $413,000.00. This sum reflects money spent on repairs and improvements in addition to policy benefits paid out but not offset by rents collected subsequent to becoming a "successor in possession." Conversely, while the evidence is disputed, it appears that the plaintiff will have netted a profit in an amount approximating $73,000 after deduction of mortgage payments and property expenses.

■ The Court's decision, however, does not and should not turn on the economics of this action. In examining the situation of the parties the court finds that the instant policy does not contain many of the elements of adhesion commonly found in many insurance contracts. The policy, albeit issued on a form provided by the defendant insurer, was negotiated by parties dealing from relatively equal bargaining positions. Hence, "This is not a case of unequal bargaining power or overreaching." *D. H. Overmeyer Co., Inc., of Ohio v. Frick Company*, 405 U.S. 174, 186, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (1972). The individuals who acted on behalf of the plaintiff's predecessor, Bergin Way, were sophisticated business persons with considerable expertise in real estate finance. The purpose of the policy at issue was to insure payment of a substantial portion of the monthly rent due under the Overmeyer lease in event of default thereunder. Such expectation was fully realized even if all resulting ramifications of defendants' possible election under paragraph 11(b) perhaps were not. At any rate, the plaintiff's predecessor did voluntarily and intelligently give its consent by contract to accept the defendant insurer as a "successor in possession" to the defaulting lessee in which event, according to a reasonable reading of the policy terms, the insurer would not be assuming the obligations of the lessee pursuant to the original lease.

■ Having found that the defendant has not breached its contract with the plaintiff and that the clause herein disputed is not ambiguous in this context, it necessarily follows in this instance that plaintiff's claim regarding the defendants' alleged tortious breach of its duty of good faith and fair dealing with its insured must also fail. This theory of recovery was first approved and adopted by the Nevada Supreme Court in *United States Fidelity v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975) wherein the court stated that:

"Where an insurer fails to deal fairly and in good faith with its insured by refusing without proper cause to compensate its insured for a loss covered by the policy

such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing."

The evidence was insufficient to support a finding that the defendant insurer acted in bad faith in any of its dealings with the insured. Moreover, there is no indication that improper consideration was given to the interests of its insured in the events which transpired subsequent to the said lessee's default. As shown, the plaintiff was not entitled to payment of said property expenses by the insurer under the policy and as such, the insurer's refusal to pay the same was not wrongful.

In light of the foregoing, the court now finds that judgment ought to be entered in favor of the defendant in this action. Under the circumstances here and the applicable law, neither party shall be awarded attorney's fees.

This Memorandum Decision shall constitute the Court's findings of fact and conclusions of law.

IT IS HEREBY ORDERED that judgment in favor of defendant shall be entered forthwith.